# EXHIBIT
# L

**SUPREME COURT OF THE STATE OF NEW YORK**
**COUNTY OF NEW YORK**
-----------------------------------------------------------------X
LIEHONG ZHUANG and XIAO YAN ZHU,

Index No. _____

                    Plaintiffs,

       -against-

**COMPLAINT**

WENGUI GUO, a/k/a MILES KWOK,
a/k/a GUO WENGUI, a/k/a KWOK HO WAN,
a/k/a KWOK HO, a/k/a, GWO WEN GUI,
a/k/a GUO WEN-GUI, a/k/a WAN GUE HAOYUN,
a/k/a HAOYUN GUO, DANIEL T. PODHASKIE,
SARACA MEDIA GROUP INC.,
ABC COMPANY 1-10 and JOHN DOE 1-10;

                    Defendants.
-----------------------------------------------------------------X

      Plaintiffs Liehong Zhuang and Xiao Yan Zhu (collectively, "Plaintiffs"), by and through their undersigned attorneys, allege, upon personal knowledge as to themselves and upon information and belief as to other matters, as follows:

<u>**NATURE OF THE ACTION**</u>

      1.     This is a civil action for, *inter alia*, breaches of contract, violations of New York Labor Law, defamation, defamation *per se*, and civil conspiracy, for which Plaintiffs seek monetary relief, including damages, interest, costs and attorney fees, in addition to injunctive relief, and statutory damages allowed by law.

      2.     Defendants have engaged in systematic unlawful labor practices, including but not limited to illegally misclassifying Plaintiff Liehong Zhuang as an "independent contractor" in a brazen attempt to avoid statutory obligations toward employees. The legal obligations skirted by Defendants include failure to pay overtime for unconscionably long hours worked, as well as failures to inform Plaintiff Zhuang of his rights.

1

3.      After the relationship between Plaintiff Liehong Zhuang and Defendants deteriorated, Defendants used Defendants' celebrity status and enormous media presence to engage in an egregious public misinformation campaign to defame Plaintiff Zhuang and his wife, Plaintiff Zhu. In sum and substance, this campaign was designed to ruin Plaintiffs' means of earning a livelihood and Plaintiffs' personal reputations, including false and malicious allegations that Plaintiffs engaged in prostitution and sex trafficking, supported Islamic terrorism, and committed larceny, burglary and other serious crimes.

4.      Through their counsel, Plaintiffs have sought to engage in a discussion with Defendants, and to encourage Defendants to retract their defamatory statements and rectify Defendants' labor law violations. Defendants have entirely ignored such pleas for amicable resolution. Apparently in response to Plaintiffs' demand letter, groups of Defendants' misguided supporters have begun harassing Plaintiffs and Plaintiffs' neighbors on a daily basis outside Plaintiffs' personal residence, parroting the falsehoods which Defendants earlier fabricated and published about Plaintiffs. These groups of Defendants' supporters have also physically attacked Plaintiff Zhuang and his attorneys, trespassed on Plaintiffs' property, forcibly detained Plaintiffs' attorneys, and forcibly attempted to steal the cellular telephone of one of Plaintiffs' attorneys. Defendants have not only encouraged mob behavior online, but Defendants have also chastised their supporters who show deference to police officers who arrive to keep the peace.

## THE PARTIES

5.      Plaintiff Liehong Zhuang ("Zhuang") is an individual resident of New York.

6.      Plaintiff Xiao Yan Zhu ("Zhu") is an individual resident of New York. At all times relevant hereto, Plaintiff Zhuang and Plaintiff Zhu have been husband and wife.

2

7.      Upon information and belief, Defendant Wengui Guo, a/k/a Miles Kwok, a/k/a Guo Wengui, a/k/a Kwok Ho Wan, a/k/a Kwok Ho, a/k/a Guo Wen Gui, a/k/a Guo Wen-Gui, a/k/a Wan Gue Haoyun, a/k/a Haoyun Guo ("Guo") is an individual resident of New York, with an office and regular place of business located at 162 East 64th Street, New York, New York 10065. Upon information and belief, Defendant Guo's primary residence and domicile is located at 781 5th Avenue, 18th Floor, New York, New York 10022.

8.      Upon information and belief, Defendant Daniel T. Podhaskie ("Podhaskie") maintains an office and regular place of business at 162 East 64th Street, New York, New York 10065.

9.      Defendant Saraca Media Group Inc. (hereafter, "Saraca") is a corporation organized and existing under the laws of the State of Delaware, with a registered office and principal place of business located at 162 East 64th Street, New York, New York 10065. Defendant Saraca was formed under the laws of the State of Delaware on May 31, 2018, and was registered to do business in the State of New York on June 14, 2018.

10.     Upon information and belief, at all relevant times hereto, Defendant Guo has owned or controlled all outstanding shares of stock, and actively participates in the management and control of Defendant Saraca.

11.     Upon information and belief, at all relevant times hereto, Defendant Podhaskie has been employed as General Counsel by Defendant Saraca.

12.     Defendants John Doe 1-10 and ABC Company 2-10 are individuals and entities whose identities are unknown to Plaintiffs at this time, but who are liable to Plaintiffs for their participation in the unlawful conduct described in this Complaint.

3

Case 7:20-cv-00257-DC   Document 33-12   Filed 12/31/20   Page 5 of 34

## JURISDICTION AND VENUE

13.     Subject matter jurisdiction is conferred upon this Court by N.Y. Const. art. VI, § 7; N.Y. Jud. Law § 140-b.

14.     This Court has personal jurisdiction over Defendants under N.Y. C.P.L.R. § 301 because each of them resides in, or regularly conducts business in, this State. This Court has personal jurisdiction over Defendant Saraca under N.Y. C.P.L.R. § 301 because this is a corporation with a registered address for service of process in New York and has consented to the jurisdiction of the Courts within the State over matters arising out of its activities within the State. Defendants have offices and regularly transact business within the State, and have participated in activities within the State that led to the transactions and occurrences that give rise to the claims in this Complaint.

15.     One or more of the parties to this action resides in, and some of the transactions and occurrences at issue in this Complaint arose in, the County of New York, State of New York. Accordingly, venue is proper in this Court pursuant to N.Y. C.P.L.R. § 503.

## FACTUAL BACKGROUND

### I.      Background of Plaintiffs and of Defendant Guo

16.     Plaintiffs are from a village named Wukan, in Guangdong Province, in the People's Republic of China ("China"). Wukan received widespread international media attention in 2011 due to the "Wukan Protests," a/k/a the "Siege of Wukan." This began as a series of protests against corruption arising from confiscations of property from local farmers. When these protests were violently suppressed by the government, the villagers expelled government workers from the village. Police responded by laying siege to the village, preventing food and other supplies from entering. Eventually, provincial officials and representatives selected by the villagers

4

reached an agreement in which land would be returned, detainees would be released, and certain anti-corruption measures would be implemented.

17.     Plaintiff Zhuang was arrested in China on December 3, 2011 because of his participation in the Wukan Protests. Plaintiff Zhuang was held in police custody, tortured and interrogated until his release on December 23, 2011. Plaintiff Zhuang's friend, Xue Jinbo, was killed in detention.

18.     In 2018, a book was published about these events, featuring Plaintiffs, which was written by American journalist Lauren Hilgers, called Patriot Number One: American Dreams in Chinatown.

19.     Defendant Guo is a former real-estate mogul from China, once estimated by Forbes Magazine to have a net worth of $1.1 billion,[1] who left China in or around 2014. Defendant Guo's departure from China was due to mounting pressure relating to impending criminal charges arising from his business and personal activities in that country. Such criminal charges include, *inter alia*, bribery, money laundering, fraud and rape.

20.     Since his arrival in the United States, Defendant Guo has generated a large national and international audience for his activities relating to criticism of the Government of China and the Chinese Communist Party (CCP). Such activities consist, in part, of online posts, which include links to, and advertisements for, Defendant Guo's commercial businesses.

21.     Upon information and belief, in or about January 2018, Defendant Guo started a news service called "Guo Media," which is currently owned and operated by Defendant Saraca, and

---

[1] Defendant Guo's actual net worth is unknown and is the subject of many of his own conflicting statements. On January 23, 2019, Defendant Guo testified under oath at a deposition in a case in the United States District Court for the Eastern District of Virginia that his net worth was "negative," that he didn't "have any more money," that he does not "[i]n reality, under the law" "own any assets in the United States," that he has no "income from any sources," and that he has "not a penny left." See Pacific Alliance Asia Opportunity Fund L.P. v. Kwok Ho Wan, et al., Index No. 652077/2017 (Memorandum in Support of Order to Show Cause dated Sept. 30, 2020, Dkt. #593). Defendant Guo maintains an exuberant lifestyle which suggests otherwise, as shown infra.

which was renamed "Gnews" in or about March 2020. Upon information and belief, Gnews has a regular audience of approximately one hundred thousand (100,000) to two hundred thousand (200,000) people. Upon information and belief, as of approximately March 2020, Defendant Saraca also owns "GTV" and "Getter," which are websites, and which largely contain videos, transcripts of Defendant Guo's speeches, and opinion pieces extolling Defendant Guo's political opinions.

22.     Defendant Guo's activism appears to be tailored more toward generating publicity for himself and promoting his political ambitions than toward aiding credible efforts to achieve meaningful reform in China. On or about January 25, 2020, for example, Defendant Guo's news service, Gnews, reportedly asserted that the Chinese government was preparing to admit that the novel coronavirus which causes COVID-19, SARS-CoV-2, originated in one of the Chinese government's laboratories.[2] This story would have bolstered various rumors in the blogosphere that SARS-CoV-2 originated as a Chinese biological weapon. Thus far, Defendants have offered no evidence in support of such claim, and the Chinese government made no admission as Gnews claimed it would. Defendant Guo tends to traffic salacious conspiracy theories rather than giving voice to Chinese people with legitimate grievances against the CCP. Defendant Guo usually appears in his videos wearing aviator sunglasses, even when recording indoors.

23.     Defendant Guo and his associates have a history of launching incendiary attacks against people who voice disagreements with him publicly. For example, Defendant Guo is

---

[2] PolitiFact, Jan. 28, 2020, https://www.politifact.com/factchecks/2020/jan/28/blog-posting/no-evidence-chinese-officials-will-say-coronavirus/

> In an article published Jan. 25, G News wrote that Chinese Communist Party officials would soon "admit that the real source of the coronavirus is from 'a lab in Wuhan (China)' linked to its covert biological weapon programs." "A reliable source told Miles Guo today that the Chinese Communist Party (CCP) will admit to the public of an 'accidental' leak of lab-created virus from a P4 lab in Wuhan to put blames on 'human errors,'" the article reads. "But the official announcement is still being finalized." … G News' story is inaccurate. We rate it False.

currently being sued in the United States District Court for the Southern District of New York by

Baiqiao Tang, a prominent Chinese dissident and leader in the 1989 student uprising and

massacre in Tiananmen Square. Such lawsuit alleges a litany of defamatory conduct and other

unlawful activities conducted by, or at the behest of, Defendant Guo. See <u>Tang v. Guo</u>, Case No.

1:17 Civ. 09031 (S.D.N.Y. 2017).

24.     Defendant Guo also has a history of engaging in vexatious litigation tactics, including

Anti-SLAPP violations, and otherwise seeking to intimidate others who disagree with him. <u>See,</u>

<u>e.g.</u>, <u>Guo v. Cheng</u>, No. A-18-779172-C (8th Dist., Nev., Order and Final Judgment, June 4,

2020) (Order dismissing Defendant Guo's claims as violations of an Anti-SLAPP statute, and

imposing costs, fees, and additional damages as a deterrent, as provided by the law); <u>Guo et al.,</u>

<u>v. Broidy, et al.</u>, No. 19STCV15368 (Sup. Court, Los Angeles County, Cal. Mar. 12, 2020)

(dismissing with prejudice all Defendant Guo's claims). Defendant Guo is currently a party to at

least five (5) active lawsuits in the New York State Court system alone, which may not include

others not visible on the Electronic Filing System and cases involving business entities he

controls.

25.     At the behest of Defendant Guo, Defendant Saraca previously filed a meritless

lawsuit against Plaintiff Zhuang in the United States District Court for the Southern District of

New York, which was dismissed for a lack of subject matter jurisdiction. See <u>Saraca Media</u>

<u>Group, Inc. v. Zhuang</u>, 20 Civ. 2780 (S.D.N.Y., Order of Dismissal dated July 16, 2020).

26.     On September 30, 2020, a temporary restraining order (TRO) was issued by the New

York State Supreme Court, enjoining and restraining Defendant Guo from, *inter alia*, selling or

transferring any property, subject to the exceptions of N.Y. C.L.P.R. § 5222, based upon

evidence that Defendant Guo had been surreptitiously evading his debts. See <u>Pacific Alliance</u>

7

<u>Asia Opportunity Fund L.P. v. Kwok Ho Wan</u>, et al., Index No. 652077/2017 (Order to Show

Cause dated Sept. 30, 2020, Dkt. #593). In that case, Defendant Guo is being sued by a lender for

a debt of approximately $114 million, and Defendant Guo has already lost summary judgment on

the issue of liability (while the calculation of precise damages has not yet been completed). <u>Id.</u>

The following is an illuminating excerpt from the papers submitted in support of that TRO:

> By early 2015, [Guo] owed PAX approximately $77 million, but rather than
> repaying his debt, he used most of that amount (over $65 million) to purchase a
> luxury Residence at the Sherry-Netherland Hotel and shield it through a double
> LLC structure…. To support his application to purchase the Residence, [Guo]
> submitted false financial records to the Sherry Netherland Board for the company
> called Beijing Zenith Holdings Company Limited ('Beijing Zenith'), which he
> then represented he owned and controlled. But when asked about Beijing Zenith
> at his deposition, [Guo] testified that he did not 'have any ownership interest in
> Beijing Zenith' when he submitted those financials, and that he had no idea why
> his attorney submitted them to the Sherry-Netherland. When shown [Guo's]
> testimony on this matter, Sherry-Netherland CEO Michael Horvitz testified that
> he believed the Sherry-Netherland had been 'defrauded.' … After PAX filed this
> lawsuit, [Guo] tweeted 'I neither have to nor should I repay this amount or boring
> money irrelevant to me for them.' … [Guo] has made countless
> misrepresentations to this Court, culminating in his deposition testimony that he
> never signed the 2011 Personal Guarantee or related contracts. But contrary to
> that false deposition testimony, [Guo] previously repeatedly had affirmed those
> contracts to the Court as authentic—and even ***filed his own copies*** with the
> Court."

<u>Id.</u> (emphasis in original).

27.     Plaintiff Zhuang first heard of Defendant Guo on or about April 19, 2017, upon

hearing of the CCP's efforts to apprehend Defendant Guo using the International Criminal Police

Organization (INTERPOL). Upon hearing of this, Plaintiff Zhuang started actively organizing

supporters of Defendant Guo. On or about October 15, 2017, while outside Defendant Guo's

residence, Plaintiff Zhuang was beaten by supporters of the CCP, and Plaintiff Zhuang was

hospitalized as a result. A few days later, Defendant Guo's assistant offered money to Plaintiff

Zhuang, which Plaintiff Zhuang refused.

28. Plaintiff Zhuang first met Defendant Guo in person on or about March 3, 2018. On that date, Plaintiff Zhuang had organized a political protest against the CCP pursuant to the request of Defendant Guo, and Defendant Guo came to the protest with a bodyguard to appear in photographs.

**II.      First Zhuang Employment Contract**

29. On or about February 21, 2018, Defendant Guo asked Plaintiff Zhuang to assist in assembling a team to support Defendant Guo's various business and political interests. Defendant Guo indicated that the work to be performed by Plaintiff Zhuang would include working with two (2) other people similarly engaged, as well as locating a studio and office for meetings.

30. Defendant Guo encouraged Plaintiff Zhuang to quit working as a driver for Uber Technologies Inc. ("Uber"), in which capacity Defendant Zhuang had been earning approximately Four Hundred Dollars ($400.00) per day, so as to allow Plaintiff Zhuang to commit his time exclusively to working for Defendant Guo. Defendant Guo asked Plaintiff Zhuang what compensation Plaintiff Zhuang would need to support Plaintiff Zhuang's family, and the two agreed that Plaintiff Zhuang would be compensated at a rate of Four Thousand Five Hundred Dollars ($4,500.00) per month ("First Zhuang Employment Contract").

31. In reliance upon Defendant Guo's promises and the terms of the First Zhuang Employment Contract, Plaintiff Zhuang ceased driving for Uber on February 21, 2018, and dedicated himself to finding a studio for Defendant Guo, supporting Defendant Guo's internet communications projects, and the related tasks requested by Defendant Guo.

32. On March 2, 2018, Defendant Guo told Plaintiff Zhuang that Defendant Guo would not make the promised payments per the First Zhuang Employment Contract.

9

33.    Plaintiff Zhuang is owed One Thousand Five Hundred Dollars ($1,500.00) in unpaid wages ("straight pay") for these services, in addition to the liquidated damages and other statutory damages and penalties as provided by law.

34.    In the alternative, Plaintiff Zhuang entered into the First Zhuang Employment Contract with Defendant Saraca and/or ABC Company 1-10, entities whose legal names are unknown to Plaintiffs at this time, inclusively, and such parties owe payment to Plaintiff Zhuang as described herein.

### III.    Second Zhuang Employment Contract

35.    On or about June 18, 2019, Plaintiff Zhuang signed a document entitled "Independent Contractor Agreement" with Defendant Saraca. As discussed infra, this document was designed by Defendants to unlawfully designate Plaintiff Zhuang as an "independent contractor" rather than as an "employee," and thereby evade the labor laws and other legal rights applicable to employees in New York City and New York State.

36.    The "Independent Contractor Agreement" was signed by Mr. Max Krasner on behalf of Defendant Saraca, following a verbal agreement between Defendant Guo and Plaintiff Zhuang that services would be provided by Plaintiff Zhuang relating to technical media production support, including equipment operation and technical assistance, as well as the creation and editing of content for online posts ("Second Zhuang Employment Contract").

37.    Plaintiff Zhuang has substantial experience in technical matters surrounding live-stream broadcasting, and Defendant Guo believed such expertise to be of considerable value in the media-related businesses of Defendant Guo and Defendant Saraca. In the discussions surrounding the Second Zhuang Employment Contract, Defendant Guo had promised Plaintiff

10

Zhuang that compensation for these services would be paid by salary at an annual rate of Fifty Thousand Dollars ($50,000.00).

38. The written "Independent Contractor Agreement" presented to Plaintiff Zhuang for signature instead provided for compensation to be paid to Plaintiff Zhuang on a per diem basis at a rate of $240.38. It is written in English, which is a language Defendant Guo and Mr. Krasner knew Plaintiff Zhuang could not read. The discrepancy between what was verbally promised to Plaintiff Zhuang by Defendant Guo and the payment terms contained in the document was never disclosed to Plaintiff Zhuang. Plaintiff Zhuang was given this document to sign under the false pretenses that it reflected the verbal agreement reached between himself and Defendant Guo.

39. From June 10, 2019 to September 3, 2019, Plaintiff Zhuang provided the media production support services as agreed pursuant to the Second Zhuang Employment Contract. Defendant Guo exercised complete control over Defendant Saraca, including oversight of Plaintiff Zhuang's services.

40. Plaintiff Zhuang worked approximately seven (7) days per week, and approximately ten (10) to fifteen (15) hours per day pursuant to the Second Zhuang Employment Contract. While Defendant Guo had originally represented to Plaintiff Zhuang that Defendant Saraca would retain the services of additional employees to work as technicians, this was never done. Defendant Guo told Plaintiff Zhuang that Defendant Guo intended to keep Plaintiff Zhuang busy. As Defendant Guo stated to Plaintiff Zhuang, "If I notice that you are not working and not occupied, I will push you. No time to sleep."

41. The hours worked by Plaintiff Zhuang in connection with the Second Zhuang Employment Contract are summarized as follows:

11

| WEEK | ACTIVE HOURS | ON-CALL | TOTAL |
|---|---|---|---|
| 06/10/19 – 06/16/19 | 93.5 | 11 | 104.5 |
| 06/17/19 – 06/23/19 | 71 | 39 | 110 |
| 06/24/19 – 06/30/19 | 90.5 | 22.5 | 113 |
| 07/01/19 – 07/07/19 | 77.5 | 39.5 | 117 |
| 07/08/19 – 07/14/19 | 84 | 29 | 113 |
| 07/15/19 – 07/21/19 | 107 | 14 | 121 |
| 07/22/19 – 07/28/19 | 111 | 15 | 126 |
| 07/29/19 – 08/04/19 | 106.5 | 18 | 124.5 |
| 08/05/19 – 08/11/19 | 87.5 | 36 | 123.5 |
| 08/12/19 – 08/18/19 | 67.5 | 44 | 111.5 |
| 08/19/19 – 08/25/19 | 36 | 60 | 96 |
| 08/26/19 – 09/01/19 | 28.5 | 71 | 99.5 |
| 09/02/19 – 09/03/19 | 6.5 | 26 | 32.5 |
| | 967 | 425 | 1,392 |

42.     Plaintiff Zhuang was paid by Defendants a total of only $10,095.96 for his services in 2019.

43.     Plaintiff Zhuang's compensation according to the verbal agreement (straight pay) for regular hours should have been $11,780.82 (calculated as having worked 86 of 365 days in 2019 at a rate of $50,000.00 per year). The difference between actual pay and straight pay owed by law by Defendants Guo and Saraca is therefore $1,684.86. In the alternative, Plaintiff Zhuang is owed money by Defendants for unpaid minimum wage.

44.     Plaintiff Zhuang is also owed unpaid overtime compensation. The chart included supra shows a total of 879.5 hours of overtime worked by Plaintiff Zhuang. Applying an hourly rate of $24.00 for regular hours (calculated from an annual salary of $50,000.00, divided by 52 workweeks per year of 40 hours each) and an overtime rate of $36.00, Plaintiff Zhuang is owed $31,662.00 in unpaid overtime in connection with the Second Zhuang Employment Contract.

12

45.     In connection with the Second Zhuang Employment Contract, Plaintiff Zhuang is owed additional sums in the form of liquidated damages and other statutory damages and penalties as provided by law.

46.     Defendants John Doe 1-10 and ABC Company 1-10 are additional parties liable to Plaintiff Zhuang for unlawful conduct in connection with the Second Zhuang Employment Contract, due to their status as an employer and for participating in the unlawful conduct described herein.

### IV.     Additional Labor Law Violations

47.     At all relevant times hereto, Defendants' conduct in connection with the First Zhuang Employment Contract and Second Zhuang Employment Contract were done intentionally and in bad faith, within the meaning of New York Labor Law and the New York Wage Theft Prevention Act (WTPA), entitling Plaintiff Zhuang to liquidated damages.

48.     Defendants did not supply Plaintiff Zhuang with wage statements, including gross wages, deductions, and net wages, as required by New York Labor Law, entitling Plaintiff Zhuang to statutory penalties of Two Hundred Fifty Dollars ($250.00) for each work day in which such statements were not provided as legally required, or a total of Five Thousand Dollars ($5,000.00), as well as reasonable attorney fees, costs, and injunctive relief.

49.     Defendants have also failed to provide to Plaintiff Zhuang, as required by law, notices containing rates of pay, the basis thereof, regular payday, and other related information, entitling Plaintiff Zhuang to recover statutory penalties of Fifty Dollars ($50.00) for each work day for which such statements were not provided, or a total of Five Thousand Dollars ($5,000.00), reasonable attorney fees, costs, and injunctive relief.

13

50.     By letter dated August 24, 2020, Plaintiff Zhuang's counsel informed Defendants of the labor law violations detailed in this Complaint, and demanded that Defendants rectify such violations. Defendants have not responded in any way to such letter. Such failure to respond further evidences the intentional nature of Defendants' violations.

### V.    Defendants' Defamatory Statements

51.     Defendants have engaged in a systematic and malicious effort to defame Plaintiffs and unlawfully damage their reputations. Plaintiff Zhuang has also criticized Defendant Guo online, even employing colorful terms, but Plaintiff Zhuang's criticisms of Defendant Guo have not crossed the line of unlawful defamation.

52.     Defendants' unlawful defamatory actions toward Plaintiffs appear to have largely been motivated by Plaintiff Zhuang's refusal to continue supporting Defendant Guo's various business and political activities, which, in turn, was due to Defendant Guo's increasingly erratic and suspicious conduct (of which many people have taken notice, including various national and international media outlets).

53.     The examples of Defendants' concerted actions to conduct malicious defamation toward Plaintiffs listed _infra_ are not intended to be exhaustive. The full extent of Defendants' unlawful defamation toward Plaintiffs may not be known until discovery is completed.

54.     Defendants Guo and Saraca have published accusations, including on the Gnews, GTV, and YouTube online platforms, that Plaintiff Zhu engages in criminal acts of prostitution, and that Plaintiff Zhuang is engaged in criminally trafficking Ms. Zhu as a prostitute, all of which are entirely untrue. Such statements constitute defamation _per se_, and have caused great emotional distress to Plaintiffs. Plaintiff Zhu has engaged the services of a therapist to cope with the emotionally devastating effects of these online accusations by Defendants, whose high

14

profile guarantees wide dissemination of online statements throughout the Chinese-American community and beyond. In a video published by Defendants Guo and Saraca on or about April 23, 2020, Defendant Guo stated in Chinese that "[Plaintiff Zhuang] can't even afford to buy clothes, and uses his own wife as a prostitute." In a video published by Defendants Guo and Saraca on or about May 4, 2020, Defendant Guo stated in Chinese, "[Plaintiff Zhuang] counts the money made by his wife sleeping with other people." In a video published by Defendants Guo and Saraca on or about July 15, 2020, Defendant Guo stated in Chinese, "[Plaintiff] Zhuang pays for food using money from his wife's prostitution." In a video published by Defendants Guo and Saraca on or about July 17, 2020, Defendant Guo stated in Chinese, "Like [Plaintiff] Liehong Zhuang, he pimps his wife out." In this final quote, Defendant Guo was using Plaintiff Zhuang as an example of what a degenerate person does.

55. Defendants have falsely accused Plaintiff Zhuang of theft, and posted a mugshot-like photo of him online, labeling Plaintiff Zhuang a "thief" in Chinese. A letter written by Defendant Podhaskie to Plaintiff Zhuang dated March 30, 2020 has since been posted to the internet, and it falsely accuses Plaintiff Zhuang of stealing various articles from the offices of Defendant Saraca, including: (1) two Samsung TVs worth Two Thousand Dollars ($2,000.00); (2) an Italian Promemoria customized chair worth Eleven Thousand Dollars ($11,000.00); (3) a private collection branded chair worth Two Thousand Dollars ($2,000.00); and (4) multiple items of broadcast and video equipment, such as cables and cameras, among other items, worth approximately Three Thousand Five Hundred Dollars ($3,500.00). Such publications were made on the Gnews, Getter, GTV and YouTube online platforms. In a video published by Defendants Guo and Saraca on or about March 31, 2020, Defendant Guo stated in Chinese, "I will tell you this, [Plaintiff] Liehong Zhuang, you are a thief."

15

56.    Defendants Guo and Saraca have posted online accusations on the GTV platform that Plaintiff Zhuang stole lunches from the office of Defendant Saraca, which Defendant Guo claimed to have been witnessed by company security guards using the surveillance camera, and that Plaintiff Zhuang damaged various article of property, all of which are completely false. In a video published by Defendants on or about April 2, 2020, Defendant Guo stated in Chinese: "Comrades, now we have 13,000 people joined [watching live broadcast], 13.8 thousand now. If everyone moves his finger to report [Plaintiff] Zhuang to the USCIS, he is 100% finished. YouTube, Twitter, 100% will close their accounts. We don't have solidarity! Comrades, it doesn't matter if we have 500,000 people, 5 million, or 50 million people, who can survive if 50 million report him at the same time? But you cannot pretend to do this. You have to really do it. Like Liehong Zhuang, who forged receipts for reimbursement, stole things, damaged property intentionally. Comrades, if you move your finger in the morning, at noon, in the evening, these three bad guys will be finished." This not only exemplifies Defendants' defamation, but also shows how Defendants goad their political supporters into settling personal scores and pushing Defendants' vendettas.

57.    On or about April 2, 2020, Defendants contacted Uber to falsely inform it that Plaintiff Zhuang had been transporting passengers while intoxicated, in a malicious attempt to sabotage Plaintiff Zhuang's livelihood. Upon information and belief, the complaint was authored by Defendant Podhaskie and originated from Defendant Podhaskie's email address. It stated, in part, "It has come to our company's attention that an Uber driver named [Plaintiff] Liehong Zhuang ('Zhuang') has been transporting Uber passengers while intoxicated. Saraca Media Group, Inc. ('Saraca') previously had a contract with Zhuang between June 2019 through [sic] September 2, 2019. On August 17, 2019, Zhuang was at our office in New York city [sic] and

Case 7:20-cv-00257-DC Document 33-12 Filed 12/31/20 Page 18 of 34

left around 5:00 p.m. [sic] E.S.T. At that time, we observed Zhuang to be visibly intoxicated. We then understand that Zhuang got into an Infiniti QX60 and began immediately picking up passengers and transporting them while intoxicated." Such false accusations were then posted publicly online, and others were encouraged to make similar complaints. Plaintiff Zhuang did not even have possession of an automobile on the date on which he was accused of having been driving while under the influence, August 17, 2019, as his automobile was being used by another driver. Such statements were made on online platforms including Gnews, Getter, GTV and YouTube. In a video published by Defendants on or about March 31, 2020, Defendant Guo stated in Chinese, "Their [Uber's] boss is a friend. I told my lawyer, 'You send this letter to Uber, if they refuse to take any measures, refusing to revoke [Plaintiff] Zhuang Liehong's license, I will sue Uber, because Uber allows a drunkard, a dangerous person, a man who insults women, a thief, to drive Uber. That makes the Uber company dangerous.'"

58.     Defendants Guo and Saraca have made online posts, on the GTV and YouTube platforms, accusing Plaintiff Zhuang of supporting terrorism and hurting people with terrorism, which is entirely untrue and subjects Plaintiff Zhuang and his family to danger of violent reprisal and personal and professional harm. In a video published by Defendants on or about April 2, 2020, Defendant Guo stated in Chinese, "So now [Plaintiff] Liehong Zhuang steals. Inti has terrorist tendencies and Liehong Zhuang supports it, and it hurt other people. He is finished 100%. So the Uber company is very, very nervous. Why? Because after our lawyer sent notice to them, if the Uber Company doesn't act, then if any passenger got hurt in the future because of him, or his association with terrorists, they are finished." The person referred to here by Defendant Guo as "Inti" is Mr. Intizar Tursun. Mr. Tursun had also provided services to Defendants Guo and Saraca. Like Plaintiff Zhuang, Mr. Tursun was also later subjected to a

17

barrage of personal attacks by Defendants Guo and Saraca. Mr. Tursun is a member of the ethnic Uighur minority group from the Xinjiang Province in Western China. The Uighurs have been subjected to policies of mass detention and reeducation by the Chinese government, while the Chinese government purports to be using such methods to reduce risks of Islamic and separatist terrorism. The mass detention of members of the Uighur minority in China has received extensive international media attention in recent years.

59.     Defendants Guo and Saraca have publicly accused Plaintiff Zhuang of repeatedly asking for and borrowing money, which is untrue. Plaintiff Zhuang borrowed money on one occasion from Defendant Guo, and repaid it in full. Such false accusations were made on the YouTube online platform. In a video published by Defendants on or about March 27, 2020, Defendant Guo stated in Chinese, "What happened to [Plaintiff] Liehong Zhuang, I really treated him like a human being. He gained the most from the 'Whistleblower Revolution.' I gave him the most, whether 'battle uniform, battle hats.' I was the first one to go downstairs to hug them. I took a great risk. He borrows, borrows, and borrows." In a video published by Defendants on or about March 31, 2020, Defendant Guo stated in Chinese, "[Plaintiff] Zhuang is the first one on the east coast to borrow money, again and again. After borrowing money, he wants to do this, to do that."

60.     Defendants Guo and Saraca have posted false statements online, including on GTV and YouTube platforms, claiming that Plaintiff Zhuang violated laws of the United States, such as having made false statements on an asylum application filed with the United States Customs and Immigration Service (USCIS), and further claiming that Plaintiff Zhuang would be deported, and further claiming that Plaintiff Zhuang sent others to prison, and further claiming that Plaintiff Zhuang has helped the CCP punish dissidents. In a video published by Defendants on or

18

about March 31, 2020, Defendant Guo stated in Chinese, "But this SOB [Plaintiff Zhuang], when he was in Wukan Village, I knew that he snitched to the police and sold all of his comrades' information to the police to escape responsibility. He was the first one to be released from prison, but his comrades died in there." In a video published by Defendants on or about April 2, 2020, Defendant Guo stated in Chinese, "In Wukan Village, you [Plaintiff Zhuang] snitched out your comrade, comrades are dead now, you escaped with your little hooker, is that so?", and later stated in Chinese, "Comrades, you have to report [Plaintiff] Zhuang to USCIS and the U.S. government, that [Plaintiff] Zhuang sent Hanlin Zhong and these brave Hong Kong people into prison, must report him."

61.     Defendants John Doe 1-10 and ABC Company 1-10, whose true identities are unknown to Plaintiffs at this time, were also responsible for the defamatory statements described <u>supra</u>.

62.     On August 24, 2020, Plaintiffs' counsel sent a letter to Defendants asking that the defamatory conduct described, <u>supra,</u> cease and desist, and asking for confirmation of the same. Defendants have not responded in any way to that letter. Such failure to respond and rectify false statements further evidences the intentional maliciousness and disregard for truth behind Defendants' defamatory conduct.

63.     From September 8, 2020 until Plaintiffs relocated on or about September 27, 2020, apparently in response to the demand letter of August 24, 2020, Defendant Guo's misguided supporters began repeatedly gathering in groups outside Plaintiffs' personal residence on an almost daily basis (the "Mob").[3] The Mob has repeatedly called Plaintiff Zhu a prostitute and

---

[3] The United States and many other countries have long and widely-revered traditions of allowing peaceful protests. Defendants' supporters will not be referred to as "protesters" herein because they have engaged in systematically violent and otherwise unlawful behavior, and they show no adherence to the traditions of peaceful protesting embraced by such leaders as Dr. Martin Luther King, Jr. and Mahatma Gandhi.

parroted the other falsehoods which Defendants fabricated and published online about Plaintiffs. Such statements have been published to Plaintiffs' neighbors and others in the neighborhood.

64.    On September 11, 2020, Defendants Guo and Saraca posted a video on the Getter online platform excoriating his supporters for showing deference to police who arrive to keep the peace. In the September 11, 2020 video, Defendant Guo incited his supporters to essentially treat the police as though they themselves were agents of the Chinese Communist Party, stating in Chinese: "When the police were called, [the supporters] trembled out of fear. So why are you even protesting? What are you protesting against? What if the Communist Party came? What if the Communist Party came with money or guns?" On September 16, 2020, Defendants Guo and Saraca posted a video on the Getter online platform encouraging the Mob at Plaintiffs' residence.

65.    On September 22, 2020, at approximately 2:00 P.M., Plaintiffs' attorneys were visiting Plaintiffs' home. Upon exiting Plaintiffs' home, a group of approximately fifteen (15) members of the Mob attacked Plaintiffs' attorneys, grabbed Plaintiffs' attorneys, struck Plaintiffs' attorneys with hands and with unidentified objects, and tried to steal a cellular telephone of one of Plaintiffs' attorneys. Plaintiffs' attorneys were then forcibly detained by the Mob for approximately forty (40) minutes. Plaintiffs' attorneys were able to contact the police, and the detention lasted until the police arrived. Plaintiff Zhuang arrived at the scene prior to the police, and was also struck and knocked to the sidewalk by the Mob. Much of this behavior was done while the Mob was unlawfully trespassing on the property at Plaintiffs' residence. These incidents are partially captured by video recordings.

66.    In a live video from Plaintiffs' residence posted by Defendants' supporters on the online platform Twitter on September 24, 2020, such supporters said in Chinese: "Our goal is to make it so he can't eat, can't sleep, can't have a place to live, can't settle."

20

67.    Upon information and belief, Defendants Guo and Saraca have provided money and other material assistance to the Mob to encourage the Mob's unlawful behavior toward Plaintiffs.

68.    Defendants John Doe 1-10 and ABC Company 1-10, whose true identities are unknown to Plaintiffs at this time, were also responsible for the unlawful actions described supra.

### FIRST CAUSE OF ACTION: BREACH OF CONTRACT

69.    Plaintiffs reallege and incorporate by reference all allegations in all proceeding paragraphs as if fully set forth herein.

70.    The First Zhuang Employment Contract and the Second Zhuang Employment Contract, discussed in greater detail, supra, were legally enforceable contractual agreements between Plaintiff Zhuang and Defendants Guo and Saraca.

71.    In the alternative, Defendants John Doe 1-10 and ABC Company 1-10, whose true identities are unknown to Plaintiffs at this time, are liable for the obligations to Plaintiff Zhuang according to the terms of the First Zhuang Employment Contract and the Second Zhuang Employment Contract.

72.    Plaintiff Zhuang performed all of his obligations and conditions precedent to payment under such agreements.

73.    Defendants violated the foregoing contracts by failing to make payments to Plaintiff Zhuang according to their terms.

74.    The parties' contracts discussed herein included implied covenants of good faith and fair dealing, which were breached by Defendants' actions by orchestrating a campaign of defamation, harassment, and other egregious conduct against Plaintiffs.

75.    Plaintiffs have suffered damages as a result of the foregoing breaches of contract, in amounts to be proved by Plaintiffs at trial.

## SECOND CAUSE OF ACTION:
## FRAUDULENT INDUCEMENT

76.    Plaintiffs reallege and incorporate by reference all allegations in all proceeding paragraphs as if fully set forth herein.

77.    The "Independent Contractor Agreement" document signed by Plaintiff Zhuang on or about June 18, 2019 was presented to Plaintiff Zhuang as containing the terms verbally agreed upon between Plaintiff Zhuang and Defendant Guo. Defendants and their agents knew at that time that Plaintiff Zhuang could not read English, and Defendants took advantage of this fact by changing the terms of the agreement.

78.    Defendants committed misrepresentations and/or omissions of material facts, which Defendants knew to be false and material, and which were made in an effort to induce Plaintiff Zhuang to rely to Plaintiff Zhuang's detriment.

79.    Plaintiff Zhuang reasonably relied upon such material misrepresentations and/or omissions of material facts to his detriment.

80.    Plaintiff Zhuang has been damaged by the aforementioned fraudulent inducement in amounts to be proved by Plaintiff Zhuang at trial.

81.    Equity requires the reformation of instruments and other relief to rectify the fraudulent inducement described herein.

## THIRD CAUSE OF ACTION:
## NONPAYMENT OF STRAIGHT OR AGREED UPON WAGES
## (N.Y. Labor Law §§ 190, 191, 193, 198 and 663(1).)

82.    Plaintiffs reallege and incorporate by reference all allegations in all proceeding paragraphs as if fully set forth herein.

83.    In violation of New York Labor Law §§ 190, 191, 193, 198 and 663(1) and other applicable employment laws, Defendants Guo and Saraca have willfully failed to pay straight or

agreed upon wages due, in connection with the First Zhuang Employment Contract and Second Zhuang Employment Contract, as set forth in more detail, supra.

84.    In the alternative, Defendants John Doe 1-10 and ABC Company 1-10, whose true identities are unknown to Plaintiffs, are liable to Plaintiff Zhuang for the failure to pay Plaintiff Zhuang straight or agreed upon compensation, as detailed herein.

85.    Defendants were not and are not permitted by state or federal law, or by order of any court of competent jurisdiction, to withhold, divert, or deduct any portion of Plaintiff Zhuang's wages.

86.    Pursuant to New York Labor Law § 198, the New York Wage Theft Prevention Act (WTPA) and other applicable laws, employers such as Defendants who have failed to pay hourly employee wages in conformance with the law shall be liable to such employees for the wages that were not paid, as well as the Court costs and attorney fees incurred in recovering the unpaid wages, in addition to liquidated damages and pre-judgment and post-judgment interest.

87.    Defendants have violated NYLL provisions cited supra, and other applicable laws, by failing to pay Plaintiff Zhuang for all compensable time and by failing to pay straight or agreed upon wages worked at the established rate.

88.    Plaintiff Zhuang has been damaged by Defendants' failures to pay straight or agreed upon wages in accordance with the law, in such amounts as shall be proved by Plaintiff Zhuang at trial.

### FOURTH CAUSE OF ACTION: NONPAYMENT OF OVERTIME COMPENSATION (N.Y. Labor Law § 190, *et seq.*)

89.    Plaintiffs reallege and incorporate by reference all allegations in all proceeding paragraphs as if fully set forth herein.

90.     The overtime wage provisions of Article 19 of the New York Labor Law (NYLL) and its supporting regulations, 12 N.Y. C.R.R. § 142-3.2, apply to Defendants and protect Plaintiff Zhuang.

91.     Defendants Saraca and Guo both qualify as Plaintiff Zhuang's employer, and are liable for the employer obligations under the NYLL, according to the standards set forth in N.Y. Labor Law §§ 190(3), 651(6) and other applicable laws.

92.     In the alternative, John Doe 1-10 and ABC Company 1-10, whose true identities are unknown to Plaintiffs at this time, were employers of Plaintiff Zhuang at the times relevant hereto, and are liable for the employer obligations under the NYLL, according to the standards set forth in N.Y. Labor Law §§ 190(3), 651(6) and other applicable laws.

93.     Due to Defendants' violations of the NYLL and other applicable employment laws, Plaintiff Zhuang is entitled to recover from Defendants the unpaid overtime wages, attorney fees, costs, pre-judgment and post-judgment interest.

94.     Defendants' violation of the NYLL and other applicable employment laws were willful and malicious, and Defendants are liable to Plaintiff Zhuang for liquidated damages, pursuant to N.Y. Labor Law §198 and the New York Wage Theft Prevention Act (WTPA).

**FIFTH CAUSE OF ACTION:**
**FAILURE TO PROVIDE WAGE NOTICES AND WAGE STATEMENTS**
**(N.Y. Labor Law § 195)**

95.     Plaintiffs reallege and incorporate by reference all allegations in all proceeding paragraphs as if fully set forth herein.

96.     Defendants Saraca and Guo willfully failed to supply Plaintiff Zhuang with accurate notices, as required by N.Y. Labor Law § 195(1), in English or in the language identified by Plaintiff Zhuang as his primary language, containing Plaintiff Zhuang's rate or rates of pay, and

24

the basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; hourly rate or rates of pay and overtime rate or rates of pay if applicable; the regular pay day designated by the employer in accordance with NYLL, Article 6, § 191; the name of the employer; any "doing business as" names used by the employer, the physical address of the employer's main office or principal place of business, and a mailing address if different, telephone number of the employer; plus such other information as the commissioner deems material and necessary.

97.     Defendants have also willfully failed to supply Plaintiff Zhuang, as required by NYLL, Article 6, § 195(3) with an accurate statement of every payment of wages, listing gross wages deduction and net wages.

98.     Through their knowing or intentional failure to provide Plaintiff Zhuang with accurate annual wage notices and/or statements required by the NYLL, Defendants have willfully violated NYLL, Article 6, §§ 190, *et seq*., and the supporting New York State Department of Labor Regulations.

99.     Due to Defendants' willful violations of NYLL, Article 6, § 195(1), Plaintiff Zhuang is entitled to statutory penalties of Fifty Dollars ($50.00) for each work day that Defendants failed to provide Plaintiff Zhuang with accurate wage notices, or a total of Five Thousand Dollars ($5,000.00), reasonable attorney fees, costs, and injunctive and declaratory relief, as provided by NYLL, Article 6, § 198(1-b).

100.     Due to Defendants' willful violation of NYLL, Article 6, § 195(3), Plaintiff Zhuang is entitled to statutory penalties of Two Hundred Fifty Dollars ($250.00) for each work day that Defendants failed to provide Plaintiff Zhuang with an accurate wage statement, or a total of Five

25

Case 7:20-cv-00257-DC   Document 33-12   Filed 12/31/20   Page 27 of 34

Thousand Dollars ($5,000.00), reasonable attorney fees, costs and injunctive and declaratory relief, as provided by NYLL, Article 6, § 198(1-d).

### SIXTH CAUSE OF ACTION:
### PROMISSORY ESTOPPEL

101.    Plaintiffs reallege and incorporate by reference all allegations in all proceeding paragraphs as if fully set forth herein.

102.    Defendants Saraca and Guo made clear and definite promises to Plaintiff Zhuang to compensate Plaintiff Zhuang as agreed in connection with the First Zhuang Employment Contract and the Second Zhuang Employment Contract, as detailed supra.

103.    Such clear and definite promises were made with the intent to induce reliance by Plaintiff Zhuang.

104.    Plaintiff Zhuang reasonably and foreseeably relied upon Defendants' promises by investing his time, foregoing other opportunities to earn income, and using his efforts to further the business objectives which Defendants as discussed.

105.    Plaintiff Zhuang was injured as a result of Defendants' breaches of their promises, and stated more fully herein.

### SEVENTH CAUSE OF ACTION:
### DEFAMATION AND DEFAMATION *PER SE*

106.    Plaintiffs reallege and incorporate by reference all allegations in all proceeding paragraphs as if fully set forth herein.

107.    Defendants have intentionally made and published knowingly false statements of fact about Plaintiffs, as discussed in more detail, supra, and such statements tended to expose Plaintiffs to public contempt, ridicule, aversion and disgrace.

108.     Additionally, and/or alternatively, Defendants have espoused and/or concurred in the published charges made by others to launch unwarranted defamatory attacks on Plaintiffs.

109.     Such statements were made maliciously and willfully, and were intended to cause harm to Plaintiffs' business and personal reputations, and to harm Plaintiffs' reputation, honor, dignity and standing in the community.

110.     The aforementioned defamatory statements were false when made by Defendants, and Defendants knew or should have known that such statements were false when made.

111.     The aforementioned defamatory statements were made with reckless disregard for their truth or falsity or with knowledge of their falsity and with wanton and willful disregard for the reputation and rights of Plaintiffs.

112.     Defendants asserted the aforementioned defamatory statements with actual malice, having known that such statements were false, and were made solely to injure Plaintiffs.

113.     Additionally and in the alternative, the aforementioned defamatory statements were made by Defendants with negligence.

114.     In publishing the aforementioned defamatory statements, Defendants acted in a grossly irresponsible manner without due consideration for the standards of information-gathering and dissemination ordinarily followed by responsible parties.

115.     The aforementioned defamatory statements were made of and concerning Plaintiffs, and were so understood by those who observed them after they were published by Defendants.

116.     Defendants had no privilege to publish the aforementioned defamatory statements.

117.     Each and every defamatory statement discussed herein constituted defamation *per se*, and damages for such defamation are presumed by law, as the published statements charged

Case 7:20-cv-00257-DC   Document 33-12   Filed 12/31/20   Page 29 of 34

Plaintiffs with serious crimes, imputed a lack of chastity, and injured Plaintiffs' trade, business and profession.

118.    As a result of the aforementioned defamatory statements, Plaintiffs have suffered irreparable damages to their personal and professional reputations, and further damages in amounts to be proved at trial.

119.    As a result of the willful and malicious nature of the aforementioned defamatory statements, Plaintiffs are entitled to recover punitive damages in amounts to be determined based upon the evidence adduced at trial. Defendants were given an opportunity to retract or otherwise mitigate their defamatory statements, and have declined to do so.

## EIGHTH CAUSE OF ACTION:
## CIVIL CONSPIRACY

120.    Plaintiffs reallege and incorporate by reference all allegations in all proceeding paragraphs as if fully set forth herein.

121.    Defendants and others have conspired with one another to commit one or more torts, including without limitation, defamation and defamation *per se*, as described in more detail, supra.

122.    Plaintiffs have been damaged as a consequence of Defendants' tortious activities, and by the conspiracy among Defendants and others to commit the same, in amounts to be proved by Plaintiffs at trial.

## NINTH CAUSE OF ACTION:
## UNJUST ENRICHMENT

123.    Plaintiffs reallege and incorporate by reference all allegations in all proceeding paragraphs as if fully set forth herein.

Case 7:20-cv-00257-DC Document 33-12 Filed 12/31/20 Page 30 of 34

124.    Plaintiff Zhuang has conferred upon Defendants Saraca and Guo an economic benefit in connection with the services performed pursuant to the First Zhuang Employment Contract and the Second Zhuang Employment Contract, discussed in greater detail, <u>supra</u>.

125.    Additionally and/or in the alternative, Plaintiff Zhuang has conferred such benefits upon Defendants John Doe 1-10 and ABC Company 1-10, whose true identities are unknown to Plaintiffs at this time.

126.    Defendants have received and retained such benefits from Plaintiff Zhuang without providing payment for receipt of the same, and Plaintiff Zhang has suffered economic loss as a direct result thereof.

127.    To allow Defendants to retain such benefits without providing payments therefor to Plaintiff Zhuang would result in unjust enrichment of Defendants.

128.    Plaintiff Zhuang is entitled to recover damages, and interest thereon, as measured by the amount by which Defendants have been unjustly enriched.

## <u>TENTH CAUSE OF ACTION:</u><br><u>FRAUDULENT MISREPRESENTATION</u>

129.    Plaintiffs reallege and incorporate by reference all allegations in all proceeding paragraphs as if fully set forth herein.

130.    Defendants knowingly and intentionally induced Plaintiff Zhuang into entering into a business relationship with Defendants, using representations that Defendants would honor their contractual and other legal duties, in exchange for the honest services provided by Plaintiff Zhuang in connection with the First Zhuang Employment Contract and the Second Zhuang Employment Contract.  Plaintiff Zhuang relied on these representations and was harmed as a result of said reliance, as Defendants wrongfully and illegally deprived Plaintiff Zhuang of the compensation owed.

Case 7:20-cv-00257-DC    Document 33-12    Filed 12/31/20    Page 31 of 34

131.    Defendants knowingly and intentionally made false statements to Plaintiff Zhuang that Defendants intended to compensate Plaintiff Zhuang in accordance with the parties' agreements. These false statements were intended to induce Plaintiffs to, *inter alia*, incur costs, forego opportunities, and invest time and effort in Defendants' business endeavors.

132.    Plaintiff Zhuang is therefore entitled to damages in amounts to be proved at trial.

## ELEVENTH CAUSE OF ACTION:
## HARASSMENT IN VIOLATION OF N.Y. PENAL CODE § 240.26

133.    Plaintiffs reallege and incorporate by reference all allegations in all proceeding paragraphs as if fully set forth herein.

134.    Defendants and Defendants' agents have engaged in a course of conduct and/or repeatedly committed acts which alarm and/or seriously annoy Plaintiffs and which served no legitimate purpose.

135.    Defendants and Defendants' agents committed said acts with the specific intent to harass, annoy and/or alarm Plaintiffs.

136.    Additionally and/or in the alternative, such wrongful acts against Plaintiffs were committed by Defendants John Doe 1-10 and ABC Company 1-10, whose true identities are unknown to Plaintiffs at this time.

137.    As a direct and proximate result of Defendants' past and continued wrongful acts set forth herein, Plaintiffs have been materially and substantially damaged in an amount to be proved at trial.

## TWELFTH CAUSE OF ACTION:
## N.Y. GENERAL BUSINESS LAW § 349

138.    Plaintiffs reallege and incorporate by reference all allegations in all proceeding paragraphs as if fully set forth herein.

30

139.    Defendants have engaged in systemic unfair and unlawful business practices, by failing to make payments to Plaintiff Zhuang in accordance with the law and with the parties' contracts, and in engaging in a systematic course of unlawful defamation and defamation *per se*, as more fully described herein.

140.    Defendants' unfair and unlawful business practices constitute a violation of, and confer a private right of action on Plaintiffs pursuant to, N.Y. General Business Law § 349.

141.    Plaintiffs have been damaged by Defendants' violations of N.Y. General Business Law § 349, including direct damages, consequential damages and lost profits, and other damages in amounts to be proved by Plaintiffs at trial, and the Court should award punitive damages and attorney fees to Plaintiffs pursuant to that law.

**WHEREFORE**, Plaintiffs Liehong Zhuang and Xiao Yan Zhu pray judgment as follows:

1.    In the form of a declaration that Defendants' conduct constitutes defamation and defamation *per se*;

2.    In the form of a declaration that Defendants Guo and Saraca unlawfully and willfully failed to provide wage statements and wage notices as required by N.Y. Labor Law § 195;

3.    An award to Plaintiff Zhuang, and against Defendants Guo and Saraca, jointly and severally, for the amount of Plaintiff Zhuang's unpaid agreed-upon or straight wages, and unpaid overtime, and for liquidated damages arising from the same;

4.    An award to Plaintiff Zhuang, and against Defendants Guo and Saraca, jointly and severally, of statutory penalties for failure to provide wage statements, in the amount of Five

31

Thousand Dollars ($5,000.00), and of statutory penalties for failure to provide wage notices, in the amount of Five Thousand Dollars ($5,000.00);

5.      An award to Plaintiffs, and against Defendants, jointly and severally, of compensatory damages in an amount not less than One Million Dollars ($1,000,000.00) for harassment, defamation and defamation *per se*;

6.      For pre-judgment and post-judgment interest, as provided by law;

7.      For attorney fees, costs, disbursements and expenses incurred by Plaintiffs to bring this civil action;

8.      For punitive damages, attorney fees, and statutory damages pursuant to N.Y. General Business Law § 349;

9.      For injunctive relief ordering Defendants to cease and desist in their campaign of defamation and defamation *per se* against Plaintiffs, and to remove, delete, or otherwise disable and erase all defamatory statements already published by Defendants and/or Defendants' agents, employees, successors and assigns;

10.      For injunctive relief as the Court deems necessary to prevent future violations of the New York Labor Law by Defendants Guo and Saraca;

11.      Such other and further relief as the Court may deem just and proper.


### JURY TRIAL DEMAND

Plaintiffs hereby demand a trial by jury as to all issues so triable.

Case 7:20-cv-00257-DC   Document 33-12   Filed 12/31/20   Page 34 of 34

TREXLER & ZHANG LLP

Dated: October 5, 2020                    By: _____
New York, New York

Jonathan T. Trexler
*Attorneys for Plaintiffs*
224 West 35th Street, 11th Floor
New York, New York 10001
Tel.: 646-248-8872
Fax: 866-303-8630
jtrexler@jtrexlerlaw.com

33