**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**MIDLAND-ODESSA DIVISION**

| | | |
|---|---|---|
| XIQIU ("BOB") FU, an individual, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | NO. 7:20-CV-257 |
| | § | |
| GUO WENGUI (a/k/a MILES KWOK, a/k/a | § | |
| WENGUI GUO, a/k/a MILES GUO, a/k/a HO | § | |
| WAN KWOK), an individual; GTV MEDIA | § | |
| GROUP, INC., a Delaware corporation, | § | |
| SARACA MEDIA GROUP, INC., a Delaware | § | |
| Corporation, and VOICE OF GUO MEDIA, | § | |
| INC., a Delaware corporation; and LIHONG | § | |
| WEI LAFRENZ (a/k/a SARA WEI) and | § | |
| DONGA FANG, individuals, | § | |
| | § | |
| Defendants. | § | |

**ORDER GRANTING PLAINTIFF'S MOTION/APPLICATION FOR PRELIMINARY**
**INJUNCTION**

Before the Court is Plaintiff's Motion/Application for Preliminary Injunction [Doc. __],

along with the evidence therein. Plaintiff's motion is GRANTED for the reasons set forth in

detail below.

Plaintiff filed his Original Complaint [Doc. 1] on November 12, 2020, alleging that

Defendants *inter alia*, worked as part of a scheme to harass and torment Plaintiff by picketing

outside his home for several hours a day on a continuous basis for 27 days in a row. The

Complaint asserts that Defendants targeted Plaintiff expressing a desire to harm him on multiple

occasions. On December 30, 2020, Plaintiff filed his Motion and Application for Preliminary

Injunction [Doc. __] with evidence, including an affidavit of Plaintiff. The Court determines that

the requested relief is warranted and GRANTS a Preliminary Injunction.

## I.    FINDINGS OF FACT

Dr. Fu and his family have lived at 4719 Bishops Castle Drive since 2004. Beginning in October 2020, people (including several Defendants) gathered in front of Plaintiff's home supposedly for protest against Dr. Fu.

The Court finds that Defendants have engaged in an organized manner at the direction of Mr. Guo Wengui ("Guo") to disrupt Plaintiff's way of life, while attempting to utilize a protection of speech as a shield for their wrongdoing. Guo currently has a sizeable following and uses GTV Media Group, Inc., Saraca Media Group, Inc., and Voice of Guo Media, Inc. to mobilize his agents and followers to disrupt Plaintiff's home life by constant threats while targeting his home. Guo has an affiliation with the Defendant corporations. Guo's team of disruptors engaged in mean-spirited and harassing behavior at Dr. Fu's and his family residence for a period of 27 days, ultimately causing him and his family to flee their home for their safety. This constituted 27 days of unquestionably mean-spirited and harassing behavior. Defendants' methods were threatening, harassing, and offensive to any reasonable person. The Court finds this conduct has become a typical practice of Defendants. Picketers also at the behest of Guo have engaged in similar conduct in New York, Virginia, California, and British Columbia. Many of these protests led to violent outbursts which have spawned others to seek judicial relief and entry of restraining orders against Guo, his agents, and followers. The picketing in front of Dr. Fu's home consisted of live-streaming, chanting, and sign-holding. The picketers were so many in number that they occupied a large span of Bishops Castle Drive, the street on which Fu's home is located. The picketing was organized, designed, and executed to harass Dr. Fu, and Defendants succeeded in their goal – day after day and many times over. The prior violent acts by Guo's contingent, the picketing presence at the Fu

residence, and the live-streaming just outside Dr. Fu's home instilled a very real and present fear in Dr. Fu and his family, as it would in any person of ordinary sensibilities. Guo and his agents by acts and words threatened to inflict harm on Fu. Guo had stated numerous times that he wanted his followers to "kill" Fu. These threats are credible as evidenced by the numerous episodes led by Guo against others he targets. Dr. Fu urged Defendants to cease their acts, though his pleas have gone unheeded thus far. Nor did Fu's report of Defendants' activities deter Defendants. Plaintiff has demonstrated that Defendants refused his requests to cease their picketing. The presence of local police did not halt Guo's followers from continually targeting Fu's home and family.

The Court further finds an injunction is proper given the evidence that Defendants have vowed to return to Dr. Fu's doorstep to continue the harassment, targeting, and risk of harm (even possible elimination) of Fu.

## II.   <u>CONCLUSIONS OF LAW</u>

A preliminary injunction is appropriate when the movant demonstrates (1) a strong likelihood of success on the merits; (2) irreparable injury without such an order; (3) that the injunction would not cause substantial harm to the respondent; and (4) the public interest would not be undermined if such an injunction were granted. *Jackson Women's Health Org. v. Currier*, 760 F.3d 448, 452 (5th Cir. 2014).

### a)  **Plaintiff's Likelihood of Success is Strong.**

Plaintiff seeks a preliminary injunction based on a theory that he shows a strong likelihood of succeeding on its civil stalking claim. Texas has codified a civil stalking cause of action which is as follows:

> *(a) A claimant proves stalking against a defendant by showing:*
> *(1) on more than one occasion the defendant engaged in harassing behavior;*

*(2) as a result of the harassing behavior, the claimant reasonably feared for the claimant's safety or the safety of a member of the claimant's family; and*

*(3) the defendant violated a restraining order prohibiting harassing behavior or:*

> *(A) the defendant, while engaged in harassing behavior, by acts or words threatened to inflict bodily injury on the claimant or to commit an offense against the claimant, a member of the claimant's family, or the claimant's property;*
>
> *(B) the defendant had the apparent ability to carry out the threat;*
>
> *(C) the defendant's apparent ability to carry out the threat caused the claimant to reasonably fear for the claimant's safety or the safety of a family member;*
>
> *(D) the claimant at least once clearly demanded that the defendant stop the defendant's harassing behavior;*
>
> *(E) after the demand to stop by the claimant, the defendant continued the harassing behavior; and*
>
> *(F) the harassing behavior has been reported to the police as a stalking offense.*

*(b) The claimant must, as part of the proof of the behavior described by Subsection (a)(1), submit evidence other than evidence based on the claimant's own perceptions and beliefs.*

TEX. CIV. PRAC. & REM. CODE § 85.003. It should be noted that there is a dearth of case law related to this particular statutory cause of action. Plaintiff has demonstrated that there is a strong likelihood of success. "Harassing behavior" is defined in the statute as "conduct by the defendant directed specifically toward the claimant, including following the claimant, that is reasonably likely to harass, annoy, alarm, abuse, torment, or embarrass the claimant." TEX. CIV. PRAC. & REM. CODE § 85.001(4). Plaintiff does not rely on his own subjective perceptions in prosecuting his case; nor do Defendants engage in constitutionally protected conduct, in part because Defendants' actions venture from constitutionally-protected into constitutionally-circumscribable conduct.

It is undisputed that protests occurred over a period of 27 continuous days and that Dr. Fu and family fled and remained from their home as a result of these continuous picketing

demonstrations and threats. Defendant Guo has a sizeable following on the internet, and he has listed Dr. Fu as a target of his "Global 'Kill Cheaters' Campaign." Taken all these activities and factors together, which occurred over such a protracted period of time with the express intent by Defendants to resume them, Defendants' conduct objectively constitutes harassing behavior.

Next, Dr. Fu reasonably fears for his safety and that of his family. Guo's protests have gained notoriety in the Chinese-American sphere, notably because Guo advocates violence and his agents have participated in such violence. Plaintiff's ongoing fears are well-grounded based on the circumstances.

Guo and his picketers (including Defendants) threatened Dr. Fu with bodily injury – to kill him, among other threats. Guo has the apparent ability to carry out threats as his directions had been consistently carried out by his army of followers; similarly, picketers have individually advocated and threatened violence against Dr. Fu. These credible threats bore capable results that caused Dr. Fu and his family to flee their home out of fear for their safety. These threats remain today.  Dr. Fu, through his counsel, sent letters to Defendants on October 30, 2020, demanding that they cease their behaviors, but this demand fell on deaf ears. Also on October 30, 2020, as required by Texas law, the police department was notified of Dr. Fu's complaint of Defendants' harassment.

### b) Plaintiff Fu's Privacy Interests Present an Injury Which Cannot be Adequately Compensated With Monetary Damages.

An invasion of privacy is an irreparable injury for which legal remedies (i.e., money damages) cannot compensate. *See Deerfield Med. Center v. City of Deerfield Beach*, 661 F.2d 328, 338 (5th Cir. 1981) ("the right of privacy must be carefully guarded for once an infringement has occurred it cannot be undone by monetary relief"). The only true remedy for Plaintiff under these facts is to restore "the privacy all citizens enjoy within their own walls," pending the outcome of

this case. *Frisby v. Schultz*, 487 U.S. 474, 484 (1988). This can be accomplished by imposing a preliminary injunction.

**c)  A Preliminary Injunction Will Not Harm Defendants.**

This Court notes its duty to avoid *substantial* harm to Defendants when considering and crafting an injunction.  Defendants are not harmed by the injunctive relief granted.  Defendants suffer little, if any, harm by being prevented from imposing on Plaintiff's privacy rights.

**d)  Public Interest Does Not Foreclose This Preliminary Injunction.**

Importantly, the Court's decision to grant Plaintiff's injunction favors the public interest. The Supreme Court in *Frisby* held that residential privacy is a sufficient state interest such that the government can regulate *targeted* residential picketing. *Frisby*, 487 U.S. at 484, 487-88. The state interest is evidenced by the State of Texas codifying the stalking tort under Chapter 85 of the Texas Civil Practice and Remedies Code. Because this injunction is narrowly drawn and does not regulate content, but instead reasonably regulates the time, place, and manner of Defendants' activities, the scope of this injunction falls within the confines of the law. *See Frisby*, 487 U.S. at 481.

### III.    RELIEF GRANTED

Accordingly, Defendants shall be enjoined from picketing[1] between the 4600 and 4800 blocks of Bishops Castle Drive and the ChinaAid office located at 1608 N. Big Spring St, Midland, Texas. The Court sets the scope of the injunction for three primary reasons: it protects Dr. Fu's unfettered right of ingress and egress to both his residence and workplace; this situation involves targeted  picketing*;* and  the injunction extends only so far as the necessary area required to restore Plaintiff's residential privacy and personal protection.

---

[1] Picketing is defined as "posting at a particular place." *See Frisby*, 487 U.S. at 482.

At both ends of Bishops Castle Drive where Plaintiff resides are entrances to an alleyway that serves Plaintiff's and others' homes. Dr. Fu and family use this alleyway to park their vehicles in a rear driveway and garage. Guests and family members also park on Bishop Castle Drive in front of the home.  This injunction could be easily rendered ineffective by not including the entrances to the alleyway and provides a proper restorative effect. Likewise, Dr. Fu and other employees of ChinaAid should have unfettered ingress and egress to their place of employment. The office of ChinaAid abuts a major traffic artery of Midland (Big Spring Street) and is also a state highway (Texas 349C).

. Picketing is a manner of speech. It matters not the content of the speech for purposes of this injunction, for the manner of speech is the focus. By descending upon the Polo Park subdivision, Guo's picketers have a goal in mind, to harass and disrupt Dr. Fu's life by targeting his home to direct their messages. Guo's protestors (including the other Defendants) by their own volition, sought to remove   Dr. Fu's and his family's right to tranquil refuge of their home.  No person, including Dr. Fu, is not required to endure the likes of the events which Defendants conducted and intend to resume Unwilling listeners, such as the Fu family, have the right to be protected when accessing, leaving, and while in their home.

This preliminary injunction provides only the necessary relief. Defendants, and those picketing at their behest and for their cause, can picket elsewhere. Defendant Guo is not enjoined from continuing his broadcasts, despite a risk of additional liability for damages as shown by the evidence presented to the Court.

**<u>CONCLUSION</u>**

Accordingly, the Court ORDERS that Defendants, their representatives, agents, servants, employees, attorneys, and those persons in active concert or participation with them are hereby enjoined from directly, or indirectly:

1) Picketing at or near Dr. Bob Fu's home between the 4600 and 4800 blocks of Bishops Castle Drive in Midland, Texas;

2) Approaching within one-hundred (100) feet of Dr. Xiqiu ("Bob") Fu, his wife, Bochun ("Heidi") Cai, and his children, Daniel Fu, Tracy Fu, and his minor daughter, M.F;

3) Picketing within fifty (50) feet of any point of ingress and egress at the ChinaAid office property located at 1608 N. Big Spring Street, Midland Texas; and

4) This Preliminary Injunction is effective upon service by the Clerk of the appropriate Writ, accompanied by this Order, and shall remain in effect through the trial of the case, which is set for _____, 2021, or until further order of this Court.

It is so ORDERED.

Signed this day _____ of _____ 2021.

_____
United States District Judge