**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**MIDLAND-ODESSA DIVISION**

| | | |
|---|---|---|
| XIQIU ("BOB") FU, an individual, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | NO. 7:20-CV-257-DC |
| | § | |
| GUO WENGUI (a/k/a MILES KWOK, a/k/a | § | |
| WENGUI GUO, a/k/a MILES GUO, a/k/a HO | § | |
| WAN KWOK), an individual; GTV MEDIA | § | |
| GROUP, INC., a Delaware Corporation, | § | |
| SARACA MEDIA GROUP, INC., a Delaware | § | |
| Corporation, and VOICE OF GUO MEDIA, | § | |
| INC., a Delaware Corporation; and LIHONG | § | |
| WEI LAFRENZ (a/k/a SARA WEI) and | § | |
| DONGA FANG, individuals, | § | |
| | § | |
| Defendants. | | |

**DEFENDANTS GTV MEDIA GROUP, INC.'S AND SARACA MEDIA GROUP, INC.'S**
**MOTION TO DISMISS THE AMENDED COMPLAINT**
**AND MEMORANDUM OF LAW IN SUPPORT**

# TABLE OF CONTENTS

**PAGES(s)**

PRELIMINARY STATEMENT ........................................................................1

BACKGROUND ...........................................................................................2

    I.     ALLEGATIONS CONCERNING SARACA ..................................2

    II.    ALLEGATIONS CONCERNING GTV.........................................2

ARGUMENT................................................................................................3

    I.     STANDARDS OF REVIEW......................................................3

        A.    Lack of Personal Jurisdiction...................................3

        B.    Failure to State a Claim ..........................................3

    II.    DEFENDANTS ARE NOT SUBJECT TO PERSONAL JURISDICTION IN TEXAS ...........................................................................4

        A.    The Court Lacks General Jurisdiction Over Defendants...........5

        B.    The Court Lacks Specific Jurisdiction Over Defendants .........5

            1.    Saraca Is Not Subject to Specific Jurisdiction................5

            2.    GTV Is Not Subject to Specific Jurisdiction ..................6

        C.    Exercising Personal Jurisdiction Would Violate Traditional Notions of Fair Play and Substantial Justice............................7

    III.   THE FAC FAILS TO STATE A CLAIM AGAINST DEFENDANTS................8

        A.    The FAC Fails to Satisfy Rule 8(a)........................8

        B.    Plaintiff Has Not Sufficiently Pleaded a Claim for Civil Stalking .............9

        C.    The FAC Fails to State a Claim for Defamation....................10

            1.    Defendants Did Not Publish Any Statements at Issue.................10

            2.    The Allegedly Defamatory "Caricatures" Are Nonactionable Opinion and Rhetorical Hyperbole ...............11

            3.    Plaintiff Has Not Plausibly Alleged That GTV Acted with Actual Malice ................13

D.      Plaintiff Does Not State a Claim for Intrusion Upon Seclusion ...............15

E.      The FAC Does Not State a Claim for Assault ........................................16

F.      The FAC Fails to State a Claim for Private Nuisance .............................17

G.      The FAC Fails to State a Claim for Civil Conspiracy .............................18

CONCLUSION ....................................................................................................................19

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Amin v. United Parcel Serv., Inc.*,
 No. 19-cv-2578, 2020 WL 3404119 (N.D. Tex. June 19, 2020) ..........................................15

*Armendariz v. Bank of Am., N.A.*,
 No. EP-15-CV-00020-DCG, 2015 WL 3504961 (W.D. Tex. May 21, 2015) ........................8

*Asbury MS CHEV LLC v. Gooding*,
 2017 WL 6604566 (S.D. Miss. Dec. 22, 2017) ...................................................................12

*Ashcroft v. Iqbal*,
 556 U.S. 662 (2009) ...............................................................................................................3

*Bell Atl. Corp. v. Twombly*,
 550 U.S. 544 (2007) ...............................................................................................................3

*Black v. State*,
 No. 08-19-00259-CR, 2020 WL 5525116 (Tex. App. – El Paso Sept. 15,
 2020)......................................................................................................................................17

*Bose Corp. v. Consumers Union of U.S., Inc.*,
 466 U.S. 485 (1984) .............................................................................................................14

*Brown v. ASC Mortg./U.S. Bank Nat. Ass'n ex rel. Structured Asset Inv. Loan Tr.*,
 No. 4:15-CV-547-A, 2015 WL 5559441 (N.D. Tex. Sept. 18, 2015) ....................................8

*Busch v. Viacom Int'l, Inc.*,
 477 F. Supp. 2d 764 (N.D. Tex. 2007)...................................................................................8

*Calder v. Jones*,
 465 U.S. 783 (1984) ...............................................................................................................6

*Campbell v. City of San Antonio*,
 43 F.3d 973 (5th Cir.1995) ....................................................................................................4

*Carr v. Brasher*,
 776 S.W.2d 567 (Tex. 1989)........................................................................................... 11, 14

*Casso v. Brand*,
 776 S.W.2d 551 (Tex. 1989)................................................................................................14

*Church of Scientology of Cal. v. Cazares*,
 638 F.2d 1272 (5th Cir. 1981) .............................................................................................13

*Clayton v. Wisener*,
  190 S.W.3d 685 (Tex. App.—Tyler 2005, pet. denied) ......................................................15

*Clemens v. McNamee*,
  615 F.3d 374 (5th Cir. 2010) ................................................................................ 3, 4, 5, 7

*Cornhill Ins. PLC v. Valsamis*,
  106 F.3d 80 (5th Cir. 1997) ...........................................................................................15

*D Magazine, L.P. v. Reyes*,
  565 S.W.3d 38 (Tex. App.—Dallas 2017), *aff'd in part, rev'd in part, Dallas*
  *Symphony Assoc., Inc. v. Reyes*, 571 S.W.3d 753 (Tex. 2019)........................................11

*D Magazine Partners, L.P. v. Rosenthal*,
  475 S.W.3d 470 (Tex. App.—Dallas 2015, pet. granted), *aff'd in part, rev'd in*
  *part on other grounds*, 529 S.W.3d 429 (Tex. 2017)......................................................11

*Daimler AG v. Bauman*,
  571 U.S. 117 (2014) ........................................................................................................5

*Dallas Morning News, Inc. v. Tatum*,
  554 S.W.3d 614 (Tex. 2018)...........................................................................................10

*Doe v. United States*,
  83 F. Supp. 2d 833 (S.D. Tex. 2000)................................................................................15

*Fielding v. Hubert Burda Media, Inc.*,
  415 F.3d 419 (5th Cir. 2005) .........................................................................................4, 6

*First United Pentecostal Church of Beaumont v. Parker*,
  514 S.W.3d 214 (Tex. 2017)...........................................................................................18

*Freedom Commc'ns, Inc. v. Brand*,
  907 S.W.2d 614 (Tex. App.—Corpus Christi 1995, no pet.) ...............................................14

*Freedom Newspapers of Tex. v. Cantu*,
  168 S.W.3d 847 (Tex. 2005)...........................................................................................14

*Gertz v. Robert Welch, Inc.*,
  418 U.S. 323 (1974) ......................................................................................................13

*Goulla v. Greentree*,
  2018 WL 6267878 (W.D. Tex. Aug. 30, 2018)....................................................................8

*Guidry v. United States Tobacco Co.*,
  188 F.3d 619 (5th Cir. 1999) ...........................................................................................3

*Gumpert v. ABF Freight Sys., Inc.*,
  293 S.W.3d 256 (Tex. App.—Dallas 2009, pet. denied)......................................................12

*Harvest House Publ. v. The Local Church*,
  190 S.W.3d 204 (Tex. App.—Houston 2006, pet. denied), *cert. denied*, 127 S.
  Ct. 2987 (2007) .............................................................................................................13

*Hearst Corp. v. Skeen*,
  159 S.W.3d 633 (Tex. 2005)...........................................................................................14

*Homeland Ins. Co. of N.Y. v. Clinical Pathology Labs., Inc.*,
  No. 1:20-CV-783-RP, 2021 WL 1646721 (W.D. Tex. Apr. 26, 2021) ..................................6

*Horsley v. Rivera*,
  292 F.3d 695 (11th Cir. 2002) .........................................................................................12

*Hustler Magazine, Inc. v. Falwell*,
  485 U.S. 46 (1988) ........................................................................................................12

*LaBella v. Charlie Thomas, Inc.*,
  942 S.W.2d 127 (Tex. App.—Amarillo 1997, pet. denied)............................................ 16, 17

*Lucero v. Trosch*,
  904 F. Supp. 1336 (S.D. Ala. 1995)................................................................................18

*Marantha Temple, Inc. v. Enter. Products Co.*,
  893 S.W.2d 92 (Tex. App.—Houston 1994, writ denied)...................................................18

*McManaway v. KBR, Inc.*,
  906 F. Supp. 2d 654 (S.D. Tex. 2012)...............................................................................4

*Milkovich v. Lorain Journal Co.*,
  497 U.S. 1 (1990)..........................................................................................................11

*Miller v. Fikes Wholesale, Inc.*,
  W-18-CV-00145-ADA, 2018 WL 9362298 (W.D. Tex. Oct. 11, 2018) ...............................4

*Monkton Ins. Servs., Ltd. v. Ritter*,
  768 F.3d 429 (5th Cir. 2014) ............................................................................................5

*N.Y. Times Co. v. Sullivan*,
  376 U.S. 254 (1964) ......................................................................................................14

*Nat'l Assn. of Letter Carriers, AFL-CIO v. Austin*,
  418 U.S. 264 (1974) ......................................................................................................12

*Offices at 2525 McKinnon, LLC v. Ornelas*,
  681 F. Supp. 2d 778 (N.D. Tex. 2010) ............................................................................18

*Panda Brandywine Corp. v. Potomac Electric Power Co.*,
   253 F.3d 865 (5th Cir. 2001) .................................................................................3

*Payne v. Baker*,
   No. 14-CV-596-A, 2014 WL 5581314 (N.D. Tex. Nov. 3, 2014)......................... 16

*Peter Scalamandre & Sons, Inc. v. Kaufman*,
   113 F.3d 556 (5th Cir. 1997) .............................................................................. 13

*Pickens v. Fletcher*,
   No. 4:12-cv-1196, 2013 WL 2618037 (S.D. Tex. June 11, 2013......................... 16

*Randall's Food Mkt., Inc. v. Johnson*,
   891 S.W.2d 640 (Tex. 1995)................................................................................ 12

*Rankin v. FPL Energy, LLC*,
   266 S.W.3d 506 (Tex. App.—Eastland 2008, pet. denied) .................................. 18

*Reddy v. Superior Glob. Sols., Inc.*,
   No. 4:11-CV-845, 2012 WL 6569800 (E.D. Tex. Oct. 2, 2012) .......................... 19

*Revell v. Lidov*,
   317 F.3d 467 (5th Cir. 2002) ............................................................................4, 5

*Roebuck v. Dothan Sec., Inc.*,
   515 F. App'x 275 (5th Cir. 2013) ................................................................. 10, 11

*Sealed Appellant I v. Sealed Appellee I*,
   625 F. App'x 628 (5th Cir. 2015) ......................................................................5, 6

*Shaw v. Palmer*,
   197 S.W.3d 854 (Tex. App.—Dallas 2006, pet. denied)...................................... 13

*Stuart v. Spademan*,
   772 F.2d 1186 (5th Cir. 1985) .............................................................................. 7

*Tidwell v. State*,
   187 S.W.3d 771 (Tex. App.—Texarkana, pet. denied 2006) .......................... 16, 17

*Triplex Commc'ns, Inc. v. Riley*,
   900 S.W.2d 716 (Tex. 1995)................................................................................ 19

*United Food & Commercial Workers Int'l Union v. Wal-Mart Stores, Inc.*,
   No. 02-15-00374 (CV), 2016 WL 6277370 (Tex. App.—Ft. Worth Oct. 27,
   2016, pet. denied)................................................................................................ 18

*Valenzuela v. Aquino*,
   853 S.W.2d 512 (Tex. 1993)......................................................................... 15, 17

*Vaughn v. Drennon,*
   202 S.W.3d 308 (Tex. App.—Tyler, 2006, no pet.)............................................................15

*Wakefield v. British Med. Journal Publ'g Grp., Ltd.,*
   449 S.W.3d 172 (Tex. App.—Austin 2014, no pet.)...........................................................7

*Walden v. Fiore,*
   571 U.S. 277 (2014) ...........................................................................................................7

*Wehling v. Columbia Broad. Sys.,*
   721 F.2d 506 (5th Cir. 1983) ............................................................................................16

*WFAA-TV, Inc. v. McLemore,*
   978 S.W.2d 568 (Tex. 1998)............................................................................................13

*Willis v. Roche Biomedical Lab., Inc.,*
   61 F.3d 313 (5th Cir. 1995) ..............................................................................................14

*Yiamouyiannis v. Thompson,*
   764 S.W.2d 338 (Tex. App.—San Antonio 1988, writ denied), *cert. denied,*
   493 U.S. 1021 (1990) ........................................................................................................13

**Statutes**

Tex. Civ. Prac. & Rem. Code § 73.005..................................................................................12

Tex. Civ. Prac. & Rem. Code § 85.003(a) ...............................................................................9

**Rules**

Fed. R. Civ. P. 8.................................................................................................................4, 8

Fed. R Civ. P. 8(a)............................................................................................................8, 9

Fed. R. Civ. P. 12(b)(2).........................................................................................................1

Fed. R. Civ. P. 12(b)(6)......................................................................................................1, 4

Defendants GTV Media Group, Inc. ("GTV") and Saraca Media Group, Inc. ("Saraca," together with GTV, "Defendants") move this Court, pursuant to Federal Rules of Civil Procedure 12(b)(2) and 12(b)(6), to dismiss the First Amended Complaint (the "FAC"), ECF No. 50, filed by Plaintiff Xiqiu Fu ("Plaintiff"), and state as follows:

## PRELIMINARY STATEMENT

The FAC is Plaintiff's second attempt at conjuring out of thin air causes of action against Defendants based on the First Amendment-protected speech of others.  Plaintiff complains of cartoons and caricatures that allegedly depict him as "a communist devil, complete with menacing horns and long black claws."  While such colorful, opinionated speech clearly does not convey factual information about Plaintiff—and thus cannot be defamatory—the FAC suffers from an even more direct fatal flaw: it does not even allege—nor can it—that Defendants published any of the allegedly defamatory material.

Nor does the FAC allege that Defendants—both corporate entities—engaged in the purportedly invasive behavior upon which Plaintiff premises his stalking, assault, intrusion upon seclusion, and private nuisance claims.  Of course, nonhuman entities such as these corporate Defendants can only commit the intentional torts of which Plaintiff complains through their employees, officers, or agents, and the FAC fails to allege that any such individuals participated in the public street protests of which he complains.

In fact, the FAC does not allege that Defendants have any ties to Texas whatsoever. Pleading no contacts with Texas, Plaintiff does not adequately allege—nor can he establish—that this Court has personal jurisdiction over Defendants.

In lieu of the required factual allegations, Plaintiff fills the FAC with hyperbole, deliberately vague group pleading, and bare legal conclusions.  As the FAC lacks sufficient factual basis to support the elements of the claims, it should be dismissed with prejudice.

1

## BACKGROUND

### I.   ALLEGATIONS CONCERNING SARACA

Saraca is a Delaware corporation with a principal place of business in New York.  (FAC ¶¶ 24, 33.)  Plaintiff alleges that Guo has used "various media platforms, including those owned or operated by" Saraca to make allegedly defamatory commentary about Plaintiff, to purportedly threaten him, and to encourage protests.  (*Id.* ¶¶ 15,16, 22, 39, 113, 150.)  Plaintiff also alleges, on information and belief, that Saraca "contributes to the daily operations of Defendant Guo's media platforms including GTV.org and GNews.org."  (*Id.* ¶ 39.)  On or about November 6, 2020, Plaintiff sent a letter to Saraca and the other defendants demanding that the allegedly defamatory commentary be retracted.  (*Id.* ¶ 98.)  These are all the allegations in the FAC referring specifically to Saraca.

### II.   ALLEGATIONS CONCERNING GTV

GTV is a Delaware corporation with a principal place of business in New York.  (*Id.* ¶¶ 23, 32.)  Plaintiff alleges that Guo has used "various media platforms, including those owned or operated by" GTV, to make allegedly defamatory commentary about Plaintiff, to purportedly threaten him, and to encourage protests.  (*Id.* ¶¶ 15,16, 22, 39, 113, 150.)  Plaintiff also alleges, on information and belief, that GTV "contributes to the daily operations of Defendant Guo's media platforms including GTV.org and GNews.org."  (*Id.* ¶ 39.)  GTV purportedly "utilized the websites GTV.org and GNews.org to distribute" allegedly defamatory "caricatures" of Plaintiff. (*Id.* ¶ 49.)  "In concert with GTV" and Defendant Voice of Guo Media, Inc. ("VoG"), Plaintiff alleges that Guo disseminated allegedly defamatory caricatures of Plaintiff.  (*Id.* ¶¶ 65, 66, 71, 75, 77, 81, 84, 86, 91.)  Plaintiff further alleges that VoG posted allegedly defamatory videos to its YouTube channel that "display the logos of . . . websites owned and operated by" GTV.  (*Id.* ¶¶ 67, 69, 73, 76, 78, 79, 82, 83, 85, 89, 92, 93.)  The FAC does not identify any websites

purportedly owned and operated by GTV.  Guo also allegedly "conspired with" GTV to post

additional allegedly defamatory material on GTV.org and GNews.org from September 2020

through March 2021.  (*Id.* ¶ 94.)  But the screenshot of GTV.org that accompanies this

allegation, dated March 30, 2021, shows only videos posted in October 2020—at least 164 days

before March 30, 2021, and long before Plaintiff sent a letter (on or about November 6, 2020) to

GTV and the other defendants demanding that the allegedly defamatory commentary be

retracted.  (*Id.* ¶ 98.)

## ARGUMENT

### I.      STANDARDS OF REVIEW

#### A.      Lack of Personal Jurisdiction

Plaintiff "bears the burden of establishing personal jurisdiction over a non-

resident defendant and that burden is met by making a *prima facie* showing."  *Clemens v.

McNamee*, 615 F.3d 374, 378 (5th Cir. 2010).  The Court must accept as true the uncontroverted

allegations in Plaintiff's complaint and must resolve in favor of Plaintiff any factual conflicts.

*Guidry v. United States Tobacco Co.*, 188 F.3d 619, 625 (5th Cir. 1999).  The Court, however, is

not obligated to credit conclusory allegations, even if uncontroverted.  *Panda Brandywine Corp.

v. Potomac Electric Power Co.*, 253 F.3d 865, 869 (5th Cir. 2001).

#### B.      Failure to State a Claim

"To survive a motion to dismiss, a complaint must contain sufficient factual matter,

accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S.

662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 569 (2007)).  A complaint must

include "more than an unadorned, the-defendant-unlawfully-harmed-me accusation."  *Id.* at 678.  A

pleading that offers conclusions or a formulaic recitation of the elements of a cause of action does

not comply with Rule 8 of the Federal Rules of Civil Procedure.  *Twombly*, 550 U.S. at 555.

"When a complaint does not meet the pleading requirements of Rule 8, Rule 12(b)(6) authorizes dismissal of a civil action for 'failure to state a claim upon which relief can be granted.'"  *McManaway v. KBR, Inc.*, 906 F. Supp. 2d 654, 660 (S.D. Tex. 2012) (quoting Fed. R. Civ. P. 12(b)(6)).  "The court is not required to conjure up unpled allegations . . . to save a complaint."  *Campbell v. City of San Antonio*, 43 F.3d 973, 975 (5th Cir.1995) (internal quotation marks and citation omitted).  Where a plaintiff has had the opportunity to cure pleading deficiencies by filing an amended complaint, the amended complaint should be dismissed with prejudice if the deficiencies have not been cured by the new filing.  *See, e.g.*, *Miller v. Fikes Wholesale, Inc.*, No. W-18-CV-00145-ADA, 2018 WL 9362298, at *3 (W.D. Tex. Oct. 11, 2018) (dismissing an amended complaint with prejudice).

## II.   DEFENDANTS ARE NOT SUBJECT TO PERSONAL JURISDICTION IN TEXAS

Under Fifth Circuit precedent, Plaintiff "bears the burden of establishing personal jurisdiction over a non-resident defendant."  *Clemens*, 615 F.3d at 378.  Jurisdiction must be permitted by both the forum state's long-arm statute and the Due Process Clause of the United States Constitution.  *Fielding v. Hubert Burda Media, Inc.*, 415 F.3d 419, 424 (5th Cir. 2005).  Because the Texas long-arm statute authorizes the exercise of personal jurisdiction to the full extent allowed by the Due Process Clause, those inquiries are identical.  *Id.* at 424-25.  The Court may exercise personal jurisdiction only if: "(1) that defendant has purposefully availed himself of the benefits and protections of the forum state by establishing 'minimum contacts' with the forum state; and (2) the exercise of jurisdiction over that defendant does not offend 'traditional notions of fair play and substantial justice.'"  *Revell v. Lidov*, 317 F.3d 467, 470 (5th Cir. 2002) (citations omitted).  "Minimum contacts" may be established through either general or specific jurisdiction.  *Id.*  "General jurisdiction exists when a defendant's contacts with the forum

state are unrelated to the cause of action but are 'continuous and systematic.' Specific

jurisdiction arises when the defendant's contacts with the forum state 'arise from, or are directly

related to, the cause of action.'" *Id.* (citations omitted).

Plaintiff must present *prima facie* evidence of the above elements. *Id.* at 469.

Conclusory allegations, even if uncontroverted, are not enough. *Sealed Appellant I v. Sealed

Appellee I*, 625 F. App'x 628, 631 (5th Cir. 2015). Plaintiff cannot meet his burden.

### A.       The Court Lacks General Jurisdiction Over Defendants

Plaintiff has not pleaded any facts that would subject Defendants to general jurisdiction in

Texas. To exercise general jurisdiction, Defendants' "affiliations with the State" must be "so

continuous and systematic as to render [them] essentially at home in the forum State." *Daimler

AG v. Bauman*, 571 U.S. 117, 139 (2014) (internal quotation marks and citation omitted). For a

corporation, "home" is generally considered to be "the place of incorporation and principal place

of business." *Id.* at 137. The Fifth Circuit has recognized that it is "incredibly difficult to establish

general jurisdiction in a forum other than the place of incorporation or principal place of business."

*Monkton Ins. Servs., Ltd. v. Ritter*, 768 F.3d 429, 432 (5th Cir. 2014) (citations omitted).

Plaintiff's allegations confirm that Defendants are not "at home" in Texas. Plaintiff

alleges that both Saraca and GTV are Delaware corporations with principal places of business in

New York. (FAC ¶¶ 32, 33.) Plaintiff has not alleged that Defendants have offices or employees

in Texas, own property in Texas, or transact business in Texas. The Court thus does not have

general jurisdiction over Defendants.

### B.       The Court Lacks Specific Jurisdiction Over Defendants

1.       Saraca Is Not Subject to Specific Jurisdiction

"Specific jurisdiction exists when the defendant has purposefully directed his activities at

residents of the forum and the litigation results from alleged injuries that arise out of or relate to

those activities." *Clemens*, 615 F.3d at 378 (internal quotation marks and citations omitted).

Plaintiff has not alleged that Saraca engaged in *any* activities, directed at the forum or otherwise.

The sole allegations concerning Saraca are that Guo purportedly "employed the assets and

resources" of Saraca, among others, to "carry out his campaign of defamation and vilification"

against Plaintiff (FAC ¶¶ 39, 113, 150) and that, on information and belief, Saraca "contribute[s]

to the daily operations of Defendant Guo's media platforms" (*id.* ¶ 39), whatever that means.

These wholly conclusory allegations do not describe what these supposed "assets and resources"

are, how they were purportedly used, or, indeed, any factual basis that would support the

exercise of jurisdiction over Saraca.  *See Sealed Appellant I*, 625 F. App'x at 631 (a court need

not credit conclusory jurisdictional allegations); *Homeland Ins. Co. of N.Y. v. Clinical Pathology

Labs., Inc.*, No. 1:20-CV-783-RP, 2021 WL 1646721, at *2 (W.D. Tex. Apr. 26, 2021) (same).

## 2. GTV Is Not Subject to Specific Jurisdiction

As with Saraca, the FAC contains no allegations that GTV engaged in *any* activities,

directed at the forum or otherwise.  Even crediting Plaintiff's improper pleading that GTV was

somehow responsible for the publication of allegedly defamatory material posted by VoG, he

still has not adequately alleged jurisdiction over GTV.  In a libel case, specific jurisdiction exists

over "an author or publisher who 'aims' a story at the state knowing that the 'effects' of the story

will be felt there."  *Fielding v. Hubert Burda Media, Inc.*, 415 F.3d 419, 425 (5th Cir. 2005)

(citing *Calder v. Jones*, 465 U.S. 783, 789-90 (1984)).  To demonstrate that a media publication

was "aimed" at a state, Plaintiff must show that "(1) the subject matter of and (2) the sources

relied upon for the article were in the forum state."  *Id.* at 426.  He cannot.

While Plaintiff has not pleaded that GTV published anything allegedly defamatory—only

that logos of unidentified websites it supposedly owns and operates appear on allegedly

defamatory material—even if GTV had published the allegedly defamatory caricatures, they are

6

not about Texas.  Rather, they relate to a matter of national and international public concern:

organizing resistance to the CCP and Plaintiff's connections to the CCP.  Even if GTV knew that

the effects of the allegedly defamatory commentary would be felt in Texas, that is not enough to

support the exercise of specific jurisdiction.  *See Clemens*, 615 F.3d at 380 (affirming dismissal of

defamation action for lack of personal jurisdiction even though alleged reputational injury would

be felt in forum state); *Walden v. Fiore*, 571 U.S. 277, 289 (2014) (mere knowledge that effects of

intentional tort would be felt in forum state is insufficient to establish personal jurisdiction).

Plaintiff, moreover, has not alleged that GTV relied on Texas sources for the allegedly

defamatory commentary.  There are no allegations that GTV visited Texas, conducted any

research or interviews in Texas, or called anyone in Texas in connection with the allegedly

defamatory commentary.  *See Wakefield v. British Med. Journal Publ'g Grp., Ltd.*, 449 S.W.3d

172, 187 (Tex. App.—Austin 2014, no pet.) (no jurisdiction where reporter did not obtain

documents from Texas or interview any Texas residents in connection with complained of

articles).  Of course, GTV did not need to rely on Texas sources for the allegedly defamatory

commentary because GTV is not alleged to have published the allegedly defamatory material,

and even if it had, the caricatures have nothing to do with Plaintiff's Texas activities.

### C.    Exercising Personal Jurisdiction Would Violate Traditional Notions of Fair Play and Substantial Justice

Even if Plaintiff were able to offer *prima facie* evidence of Defendants' minimum

contacts with Texas, the Court still must determine "whether maintenance of the suit comports

with traditional notions of fair play and substantial justice."  *Stuart v. Spademan*, 772 F.2d 1186,

1191 (5th Cir. 1985).  This analysis requires "consider[ation of] . . . the interest of the state in

providing a forum for the suit, the relative conveniences and inconveniences of the parties, and

the basic equities."  *Id.* (citations omitted).  These factors weigh against personal jurisdiction

7

here.  The FAC does not allege that Defendants published any allegedly defamatory material.

Moreover, Defendants are not domiciled in Texas and have no contacts with Texas.  Imposing

the burden on Defendants to defend this lawsuit in Texas would violate fair play and substantial

justice.  *See Busch v. Viacom Int'l, Inc.*, 477 F. Supp. 2d 764, 773 n.5 (N.D. Tex. 2007) (forcing

"a New York citizen with no meaningful contacts with Texas, to defend this lawsuit in Texas

would impose an unjustified and unconstitutional burden on him").  There is no countervailing

interest in social policy or judicial efficiency to support Plaintiff's effort to silence his critics.

**III.    THE FAC FAILS TO STATE A CLAIM AGAINST DEFENDANTS**

    **A.    The FAC Fails to Satisfy Rule 8(a)**

        The FAC improperly lumps all the defendants together in each cause of action and, other

than bald conclusory assertions, contains virtually no facts specific to Saraca.  It is well

established that "[g]lobal allegations of wrongdoing" do not satisfy even the minimum standard

of Federal Rule of Civil Procedure 8 and "are insufficient to state a claim for relief."  *Armendariz

v. Bank of Am., N.A.*, No. EP-15-CV-00020-DCG, 2015 WL 3504961, at *8 (W.D. Tex. May 21,

2015) (dismissing claims because plaintiff failed to "specify what acts or omissions [defendant]

committed that form the basis of any of Plaintiff's claims"); *see also Goulla v. Greentree*, 2018

WL 6267878, at *3 (W.D. Tex. Aug. 30, 2018), *adopted*, 2019 WL 2563831 (W.D. Tex. Feb. 6.

2019) (dismissing complaint because it "makes allegations generally against all defendants");

*Brown v. ASC Mortg./U.S. Bank Nat. Ass'n ex rel. Structured Asset Inv. Loan Tr.*, No. 4:15-CV-

547-A, 2015 WL 5559441, at *2 (N.D. Tex. Sept. 18, 2015) ("Lumping defendants together is

insufficient to state a claim against any of them.").

        The FAC's improper group pleading is compounded and made more confusing by the

deliberately vague allegations concerning the allegedly defamatory caricatures.  Plaintiff alleges

that VoG posted allegedly defamatory videos to its YouTube channel that "display the logos of . . .

websites owned and operated by" GTV. (FAC ¶¶ 67, 69, 73, 76, 78, 79, 82, 83, 85, 89, 92, 93.) The FAC never identifies these websites and there are no allegations as to what websites are purportedly owned and operated by GTV. As with Saraca, other than conclusory allegations that Guo "acted in concert with" GTV (*id.* ¶¶ 65, 66, 71, 75, 77, 81, 84, 86, 91), there are no allegations that GTV actually did anything. The cumulative effect of these pleading deficiencies renders the FAC largely inscrutable and fails to "provide a short and plain statement of the claim showing the pleader is entitled to relief." Fed. R. Civ. P. 8(a).

### B. Plaintiff Has Not Sufficiently Pleaded a Claim for Civil Stalking

To sustain his claim for civil stalking, Plaintiff must show, among other things, that Plaintiff at least once clearly demanded that Defendants stop the "harassing behavior" he alleges they engaged in and, *after* Plaintiff's demand to stop, Defendants continued the "harassing behavior." Tex. Civ. Prac. & Rem. Code § 85.003(a).

By letter dated November 3, 2020 and referenced in the FAC as the November 6, 2020 letter, Plaintiff demanded that Defendants "cease and desist from summoning your followers to take action, including, but not limited to, advocating the use of physical violence against me, my property, and my organization." (See Exhibit A to Declaration of L. David Anderson.) But the FAC does not contain any allegations that the allegedly harassing behavior continued after November 3, 2020. The sole allegation regarding Defendants' post-demand behavior is that Guo allegedly "conspired with" GTV to post additional allegedly defamatory material on GTV.org and GNews.org from September 2020 through March 2021. (FAC ¶ 94). But the screenshot of GTV.org "as of March 30, 2021," accompanying the text in paragraph 94 shows only videos posted, at the latest, "164 days ago," which is long before Plaintiff's November 3, 2020 letter. Plaintiff's assertion that "each Defendant has continued to engage in such behavior" (*id.* ¶ 106) is a merely conclusory allegation unsupported by the facts alleged in the FAC and that the Court

9

should therefore not credit.  Because Plaintiff has not sufficiently alleged facts supporting the element for civil stalking that Defendants continued their harassing behavior after his demand to stop, Count I must be dismissed.

>    **C.**     **The FAC Fails to State a Claim for Defamation**

>    **1.**     Defendants Did Not Publish Any Statements at Issue

The "threshold requirement" for defamation is "the publication of a false statement to a third party."  *Dallas Morning News, Inc. v. Tatum*, 554 S.W.3d 614, 623 (Tex. 2018).  Plaintiff has not alleged that Saraca published any of the allegedly defamatory statements identified in the FAC or engaged in any conduct relevant to the publications in this case.  The FAC alleges that "[u]tilizing his vast audience on the internet, including platforms owned or operated by . . . Saraca . . . , Guo repeatedly encouraged his hundreds of thousands of followers to disparage and malign Dr. Fu's reputation."  (FAC ¶ 113.)  This statement merely alleges that Guo used Saraca to "encourage" his followers to "disparage" Plaintiff.  It does not allege that Saraca published any statements at all; indeed, it states that the unidentified platforms owned or operated by Saraca were part of Guo's "audience."  The only other allegations in the FAC that are at all relevant to Saraca and Plaintiff's purported defamation claim are wholly conclusory allegations that Guo "has employed the assets and resources" of Saraca to carry out a so-called "campaign of defamation."  (*Id.* ¶¶ 16, 39.)  Such conclusory allegations cannot serve as the basis for a defamation claim against Saraca.  *See Roebuck v. Dothan Sec., Inc.*, 515 F. App'x 275, 280 (5th Cir. 2013) (affirming dismissal of defamation claim where allegations were merely conclusory).  Saraca, therefore, is entitled to dismissal of Plaintiff's defamation claim because the FAC fails to allege that it published any statement that could give rise to such a claim.

Similarly, Plaintiff seeks to impose defamation liability on GTV solely on the basis of another defendant—VoG—posting allegedly defamatory videos to its YouTube channel that

"display the logos of . . . websites owned and operated by" GTV.  (FAC ¶¶ 67, 69, 73, 76, 78, 79,

82, 83, 85, 89, 92, 93.)  The FAC neither identifies these websites nor alleges that GTV owns or

operates any websites.  The only alleged conduct related to publication of the allegedly

defamatory statements is that of VoG, not GTV.  Otherwise, the FAC makes the same

conclusory allegations described above with respect to Saraca regarding Guo purportedly using

the "assets and resources" of GTV.  The Court need not credit such conclusory allegations and

Count II should be dismissed as to Defendants accordingly.  *See Roebuck*, 515 F. App'x at 280.

       2.      <u>The Allegedly Defamatory "Caricatures" Are Nonactionable Opinion and
Rhetorical Hyperbole</u>

      Even if Plaintiff could show that GTV published the caricatures complained of, they are

nevertheless nonactionable as a matter of law because defamation can only arise from statements that

are capable of being proven false.  *See D Magazine, L.P. v. Reyes*, 565 S.W.3d 38, 46 (Tex. App.—

Dallas 2017), *aff'd in part, rev'd in part*, *Dallas Symphony Assoc., Inc. v. Reyes*, 571 S.W.3d 753

(Tex. 2019).  Unlike statements of fact, expressions of opinion are not capable of being proven false.

*See Milkovich v. Lorain Journal Co.*, 497 U.S. 1, 19-21 (1990).  Expressions of opinion are thus

protected from defamation liability even if they are derogatory or disparaging.  *Carr v. Brasher*, 776

S.W.2d 567, 570 (Tex. 1989) ("All assertions of opinion are protected by the first amendment of the

United States Constitution and article I, section 8 of the Texas Constitution.").  Whether a statement

is a statement of fact or opinion is a question of law to be determined by the Court based on the

statement's "verifiability and the entire context in which the statement was made."  *D Magazine*

*Partners, L.P. v. Rosenthal*, 475 S.W.3d 470, 480 (Tex. App.—Dallas 2015, pet. granted), *aff'd in*

*part, rev'd in part on other grounds*, 529 S.W.3d 429 (Tex. 2017).

      Plaintiff alleges that logos of websites supposedly owned and operated by GTV appeared

on caricatures of him depicting him as "a communist devil, complete with menacing horns and

long black claws," (FAC ¶ 57), "a CCP devil" (*id.* ¶¶ 64, 65), a "communist devil" (*id.* ¶¶ 83,

91), a "CCP spy" (*id.* ¶¶ 66, 75, 79), "wielding an AK-47 machine gun alongside a communist

hammer and sickle" (*id.* ¶ 71), "a CCP clown" (*id.* ¶¶ 73, 74, 86), a "Religious Quack" (*id.* ¶ 75),

"alongside a CP insignia and piles of cash" (*id.* ¶ 77), "a CCP officer" (*id.* ¶ 81), and "a CCP

hydra" (*id.* ¶¶ 84, 85).  The exaggerated and satirical nature of the caricatures make it evident to

a reasonable reader that they do not convey factual information about Plaintiff.  *See Hustler*

*Magazine, Inc. v. Falwell*, 485 U.S. 46, 57 (1988) (cartoon depicting televangelist having

incestuous relationship not actionable because viewer could not have reasonably inferred the

cartoon to represent actual facts); *Gumpert v. ABF Freight Sys., Inc.*, 293 S.W.3d 256, 266 (Tex.

App.—Dallas 2009, pet. denied) (fake business cards and flyers with crude depictions of plaintiff

as having "anal warts" are, as a matter of law, incapable of being taken as sources of factual

information about plaintiff); *Asbury MS CHEV LLC v. Gooding*, 2017 WL 6604566, at *3 (S.D.

Miss. Dec. 22, 2017) (calling plaintiff "THE DEVIL" is merely non-actionable name-calling).

The irreverent and over-the-top nature of the "caricatures" also function as rhetorical

devices.  The First Amendment protects colorful and figurative language because "exaggeration

and non-literal commentary have become an integral part of social discourse."  *Horsley v.*

*Rivera*, 292 F.3d 695, 701 (11th Cir. 2002) (citation omitted).  Even "intemperate, abusive, or

insulting language" is protected if the speaker "believes such rhetoric to be an effective means to

make its point."  *Nat'l Assn. of Letter Carriers, AFL-CIO v. Austin*, 418 U.S. 264, 283 (1974).

The caricatures were part of a furious debate about opposition to the CCP in the face of a

brutal crackdown on dissidents.  Characterizing Plaintiff as a "Religious Quack," "Fake pastor,"

"Pro-democracy imposter," and "Phony democracy fighter" (FAC ¶ 91)[1] is no more than

---

[1] Plaintiff is apparently claiming that the phrase "CCP Party School's lecturer" is defamatory. (*See* FAC ¶¶ 79, 91,
92.) By Plaintiff's own admission, however, this is a literally true statement (*id.* ¶ 117 ("This was my teacher's ID

opinionated, exaggerated commentary used for rhetorical effect to stir passions. *See, e.g.*, *Yiamouyiannis v. Thompson*, 764 S.W.2d 338, 341 (Tex. App.—San Antonio 1988, writ denied), *cert. denied*, 493 U.S. 1021 (1990) (viewed in the context of the debate surrounding water fluoridation, characterization of fluoridation opponent as a "quack" and "outrageous hoke artist" is "vintage hyperbole" and constitutes protected opinion); *Church of Scientology of Cal. v. Cazares*, 638 F.2d 1272, 1289 (5th Cir. 1981) (holding that a description of church as a "rip-off, money motivated operation" is not defamatory as a matter of law); *Harvest House Publ. v. The Local Church*, 190 S.W.3d 204, 212 (Tex. App.—Houston 2006, pet. denied), *cert. denied*, 127 S. Ct. 2987 (2007) (labelling a church as a "cult" is not actionable); *Shaw v. Palmer*, 197 S.W.3d 854, 857-58 (Tex. App.—Dallas 2006, pet. denied) (calling an ex-secretary "crazy" is "metaphor or hyperbole" and does not convey a verifiable fact).

3.   Plaintiff Has Not Plausibly Alleged That GTV Acted with Actual Malice

Plaintiff cannot legitimately deny that he is a public figure. As "an internationally recognized spokesperson" (FAC ¶ 12) and "a well-known figure in the Midland, Chinese American, and Christian communities across the nation" (*id.* ¶ 119) whose "autobiography has been widely distributed" and whose "September 26 address was delivered before thousands of individuals participating in the 2020 Prayer March in Washington, D.C." (*id.* ¶ 118), Plaintiff qualifies as both a general purpose and a limited purpose public figure. *See WFAA-TV, Inc. v. McLemore*, 978 S.W.2d 568, 571-72 (Tex. 1998). "Those classed as public figures have thrust themselves to the forefront of particular public controversies in order to influence the resolution of the issues involved . . . they invite attention and comment." *Gertz v. Robert Welch, Inc.*, 418 U.S. 323, 345 (1974).

---

for my day job at the Communist Party school") and therefore cannot be defamatory. *See* Tex. Civ. Prac. & Rem. Code § 73.005 (truth is absolute privilege); *Randall's Food Mkt., Inc. v. Johnson*, 891 S.W.2d 640, 646 (Tex. 1995) (a "literally true" statement is a "complete defense" to a defamation claim).

As a public figure, Plaintiff must allege with convincing clarity that the allegedly defamatory statements were made with actual malice.  *E.g.*, *Peter Scalamandre & Sons, Inc. v. Kaufman*, 113 F.3d 556, 560 (5th Cir. 1997).  Publishing false statements of fact with actual malice means "with knowledge that they were false or with reckless disregard of whether they were false or not."  *N.Y. Times Co. v. Sullivan*, 376 U.S. 254, 280 (1964).  "Reckless disregard" is a subjective standard that focuses on the state of mind of the defendant at the time the statement was published.  *See Hearst Corp. v. Skeen*, 159 S.W.3d 633, 637 (Tex. 2005).  It means that the publisher, in fact, entertained serious doubts about the truth of the statement. *Casso v. Brand*, 776 S.W.2d 551, 558 (Tex. 1989).  An error in judgment is not enough.  *Carr v. Brasher*, 776 S.W.2d 567, 570-71 (Tex. 1989).  Failing to investigate the facts before they are published, taking a plaintiff's statements out of context, or failing to correct an article after learning of plaintiff's objection are insufficient to show actual malice.  *Skeen*, 159 S.W.3d at 637; *Freedom Commc'ns, Inc. v. Brand*, 907 S.W.2d 614, 622 (Tex. App.—Corpus Christi 1995, no pet.); *Freedom Newspapers of Tex. v. Cantu*, 168 S.W.3d 847, 855 (Tex. 2005).

There is not a single allegation in the FAC that GTV subjectively entertained serious doubts about the truth of the allegedly defamatory statements.  The only allegations in the Complaint that even touch on purported fault on the part of GTV are conclusory assertions that the allegedly defamatory commentary is "knowingly false."  (FAC ¶¶ 89, 93.)  These allegations, however, merely conflate falsity with actual malice, which are two separate elements of a defamation claim, and as the United States Supreme Court has noted, "there is a significant difference between proof of actual malice and mere proof of falsity."  *Bose Corp. v. Consumers Union of U.S., Inc.*, 466 U.S. 485, 511 (1984); *see also Willis v. Roche Biomedical Lab., Inc.*, 61 F.3d 313, 317 (5th Cir. 1995) (mere fact that a statement is false is not evidence of actual

malice).  The FAC does not come anywhere near demonstrating actual malice with convincing clarity.  Count II must therefore be dismissed against GTV.

### D.  Plaintiff Does Not State a Claim for Intrusion Upon Seclusion

The Court should dismiss Plaintiff's intrusion upon seclusion claim against Defendants because Plaintiff does not allege that they physically invaded his property or otherwise invaded his private space or private affairs.  To sustain a claim for invasion of privacy based on intrusion upon seclusion, Plaintiff must adequately allege (1) an intentional intrusion, physically or otherwise, upon Plaintiff's solitude, seclusion, or private affairs or concerns; (2) that the intrusion would be highly offensive to a reasonable person; and (3) that Plaintiff suffered a resulting injury.  *Clayton v. Wisener*, 190 S.W.3d 685, 696 (Tex. App.—Tyler 2005, pet. denied).  Liability for invasion of privacy is reserved for intrusions in which the defendant physically invades a person's property or eavesdrops on the plaintiff's conversations.  *See, e.g.*, *Cornhill Ins. PLC v. Valsamis*, 106 F.3d 80, 85 (5th Cir. 1997); *Amin v. United Parcel Serv., Inc.*, No. 19-cv-2578, 2020 WL 3404119, at *6 (N.D. Tex. June 19, 2020); *Doe v. United States*, 83 F. Supp. 2d 833, 840 (S.D. Tex. 2000) (intrusion upon seclusion is a "quasi-trespass tort," involving "spying, opening private mail, wire-tapping, or entering a person's residence"); *Vaughn v. Drennon*, 202 S.W.3d 308, 320 (Tex. App.—Tyler, 2006, no pet.) (holding that defendant watching plaintiff across the street through binoculars, taking pictures, and driving by plaintiff's house did not constitute intrusion upon seclusion).  The FAC alleges no such conduct.

There are no allegations that any of the protestors were Defendants' employees or agents. Even if GTV could be deemed responsible for the protestor's conduct—which it cannot—there are no allegations that any of the protestors entered Plaintiff's house, tried to peer into the windows of his house or tapped his phones.  The FAC instead alleges that protests took place "on the sidewalk" or "outside Dr. Fu's home."  (FAC ¶¶ 44, 52, 54, 55, 58, 60, 66, 68, 71, 72, 75, 77,

81).  At most, these allegations amount to a group of people—which does not include Defendants or their employees—exercising their First Amendment rights by picketing on a public street outside of Plaintiff's house.  Plaintiff's allegations are thus plainly insufficient to support a claim for intrusion upon seclusion.  *See Valenzuela v. Aquino*, 853 S.W.2d 512, 513 (Tex. 1993) (holding that picketing, even if focused or directed at a particular residence, does not satisfy the elements of an intrusion upon seclusion claim).

Plaintiff, moreover, has not alleged that the filming of the protests involved a physical invasion or surveillance of his home.  Instead, he alleged only that the protests were broadcast.  The screenshots included in the FAC confirm that the protestors were only on the street—not on or in Plaintiff's property.  (FAC ¶¶ 55, 56, 58, 60, 66, 86.)  A broadcast showing a person's residence from a public street does not constitute an invasion of privacy.  *Wehling v. Columbia Broad. Sys.*, 721 F.2d 506, 509 (5th Cir. 1983).  Given that the FAC does not adequately allege that anyone, let alone Defendants, physically invaded his property or otherwise invaded his private space, Plaintiff's claim for invasion of privacy (Count III) should be dismissed.

### E.      The FAC Does Not State a Claim for Assault

Plaintiff appears to be asserting a claim for assault against Defendants.  Nonhuman entities, however, can only act through their employees and agents.  There are no allegations in the FAC that any of Defendants' officers, employees, or agents were even present in Midland, Texas, much less that they threatened Plaintiff with offensive contact.

As Plaintiff has not alleged that anyone, let alone Defendants, came into physical contact with him, he cannot state a claim for physical assault.  To sufficiently plead a claim for assault for threat of imminent bodily injury, Plaintiff must show a "reasonable apprehension of imminent bodily harm."  *Tidwell v. State*, 187 S.W.3d 771, 775 (Tex. App.—Texarkana, pet. denied 2006).  In such circumstances, "imminent" means "near at hand or on the verge of

16

happening." *Payne v. Baker*, No. 14-CV-596-A, 2014 WL 5581314, at *3 (N.D. Tex. Nov. 3,

2014).  Words alone, however, do not constitute an assault.  *LaBella v. Charlie Thomas, Inc.*,

942 S.W.2d 127, 138 (Tex. App.—Amarillo 1997, pet. denied).  There must also be an overt act

in apparent execution of the purported threat.  *See, e.g.*, *Pickens v. Fletcher*, No. 4:12-cv-1196,

2013 WL 2618037 (S.D. Tex. June 11, 2013 (yelling "I will kill you n*****" while pointing gun

at plaintiff); *Black v. State*, No. 08-19-00259-CR, 2020 WL 5525116, at *5 (Tex. App. – El Paso

Sept. 15, 2020) (displaying a knife in a threatening manner); *Tidwell*, 187 S.W.3d at 775

(shouting "Get the f--- away from me or I'll shoot you" while brandishing a revolver).

Plaintiff does not allege any conduct by Defendants to execute a threat to physically harm

him or his family.  Plaintiff does not and cannot allege, for example, that Defendants—or their

employees or agents—carried any weapons while attending any of the protests.  Instead, Plaintiff

merely alleges that purported verbal threats were "disseminated across a range of social media

platforms owned or operated by Guo and the corporate Defendants."  (FAC ¶ 126.)  Putting aside

this allegation's vague and conclusory nature, and even assuming that Defendants themselves

made the purported threats (they did not) that they allegedly "disseminated," words alone cannot

constitute an assault, *LaBella*, 942 S.W.2d at 138.  Count IV should be dismissed.

  **F. The FAC Fails to State a Claim for Private Nuisance**

Plaintiff's private nuisance claim is premised entirely on the protests allegedly organized

by Guo.  (FAC ¶ 144.)  Defendants are not mentioned in the allegations regarding Plaintiff's

purported private nuisance cause of action.  As corporate entities, Defendants are not alleged to

have participated in the protests, nor are there any allegations that any of Defendants' employees

or agents participated in them.

In any event, Plaintiff's private nuisance claim fails as a matter of law.  Protesting on a

public street is not a nuisance per se.  *See Valenzuela v. Aquino*, 853 S.W.2d 512, 513-14 (Tex.

1993) (internal citations omitted) ("There may be limits on focused residential picketing, . . . but it is not unlawful per se.").  Plaintiff's appears to claim that the lawful protests deprived him of the enjoyment of his property because of purported loss of peace of mind.[2]  But private nuisance claims "based on fear, apprehension, or other emotional reaction" that result from lawful activity are not permitted.  *Marantha Temple, Inc. v. Enter. Products Co.*, 893 S.W.2d 92, 100 (Tex. App.—Houston 1994, writ denied); *see also Rankin v. FPL Energy, LLC*, 266 S.W.3d 506, 511-13 (Tex. App.—Eastland 2008, pet. denied) (denying nuisance claim based on emotional reaction).

In addition, Plaintiff's private nuisance claim should be dismissed as moot because Defendants have already agreed to time, place and manner restrictions as to any protests relating to Plaintiff.  Because the proper remedy in nuisance actions premised on protests is injunctive relief, not damages, and Plaintiff already has obtained this relief, there is nothing further to litigate.  *See, e.g.*, *United Food & Commercial Workers Int'l Union v. Wal-Mart Stores, Inc.*, No. 02-15-00374 (CV), 2016 WL 6277370 (Tex. App.—Ft. Worth Oct. 27, 2016, pet. denied); *Offices at 2525 McKinnon, LLC v. Ornelas*, 681 F. Supp. 2d 778 (N.D. Tex. 2010); *Lucero v. Trosch*, 904 F. Supp. 1336 (S.D. Ala. 1995).  Count V of the FAC should be dismissed.

### G.      The FAC Fails to State a Claim for Civil Conspiracy

Plaintiff appears to allege that Defendants participated in a civil conspiracy with defendant Guo, but he has asserted no facts that would make such a claim plausible.  Indeed, he names only defendant Sara Wei as Guo's supposed "co-conspirator."  (FAC ¶ 148.)

To sustain a claim for civil conspiracy, Plaintiff must show: "(1) a combination of two or more persons; (2) the persons seek to accomplish an object or course of action; (3) the persons reach a meeting of the minds on the object or course of action; (4) one or more unlawful, overt

---

[2] Plaintiff has not pleaded—nor could he—that the protests diminished the reasonable use value of his property.

acts are taken in pursuance of the object or course of action; and (5) damages occur as a proximate result." *First United Pentecostal Church of Beaumont v. Parker*, 514 S.W.3d 214, 222 (Tex. 2017).  Civil conspiracy also requires specific intent. *Triplex Commc'ns, Inc. v. Riley*, 900 S.W.2d 716, 719 (Tex. 1995).  Merely showing a joint "intent to engage in conduct that resulted in the injury" is not sufficient to state a claim for civil conspiracy. *Id.*

The sole (conclusory) allegation regarding Defendants' purportedly conspiratorial conduct does not state a civil conspiracy claim against Defendants: in "carrying out a campaign" to allegedly incentivize protestors to picket on a public street and purportedly "distribute slanderous [sic] articles, posters, and other materials," "Guo utilized the assets and resources of" Defendants.  (FAC ¶ 150)  Plaintiff has not even attempted to allege that the supposed co-conspirators sought to accomplish a course of action, that there was a meeting of the minds as to the objective, or any basis for when, why, and how they shared "knowledge of, agreed to, or intended a common objective." *Reddy v. Superior Glob. Sols., Inc.*, No. 4:11-CV-845, 2012 WL 6569800, at *8 (E.D. Tex. Oct. 2, 2012), *adopted*, 2012 WL 6569787 (E.D. Tex. Dec. 17, 2012).  Given that Plaintiff has not pleaded factual allegations supporting the requisite elements of his civil conspiracy claim as to Defendants, Count VI must be dismissed.

## **CONCLUSION**

For the foregoing reasons, the Court lacks personal jurisdiction over Defendants and the FAC fails to state a claim upon which relief may be granted.  The Court should dismiss all claims against them.

Dated: May 14, 2021                    Respectfully submitted,

                                       BAKER & HOSTETLER LLP


                                       By:    */s/ L. David Anderson*
                                              L. David Anderson
                                              Lead Counsel
                                              Texas State Bar No. 00796126
                                              danderson@bakerlaw.com
                                              2850 North Hardwood Street
                                              Suite 1100
                                              Dallas, TX  75201-2640
                                              Telephone:   214.210.1200
                                              Facsimile:    214.210.1201

                                              ***ATTORNEYS FOR DEFENDANTS GTV
                                              MEDIA GROUP, INC. AND SARACA
                                              MEDIA GROUP, INC.***



## CERTIFICATE OF SERVICE

        Pursuant to the Federal Rules of Civil Procedure, the undersigned attorney of record certifies that a copy of the foregoing instrument was served upon all counsel of record via the Court's electronic filing system on May 14, 2021.


                                        */s/ L. David Anderson*
                                        L. David Anderson

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**MIDLAND-ODESSA DIVISION**

| | | |
|---|---|---|
| XIQIU ("BOB") FU, an individual, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | NO. 7:20-CV-257-DC |
| | § | |
| GUO WENGUI (a/k/a MILES KWOK, a/k/a | § | |
| WENGUI GUO, a/k/a MILES GUO, a/k/a HO | § | |
| WAN KWOK), an individual; GTV MEDIA | § | |
| GROUP, INC., a Delaware Corporation, | § | |
| SARACA MEDIA GROUP, INC., a Delaware | § | |
| Corporation, and VOICE OF GUO MEDIA, | § | |
| INC., a Delaware Corporation; and LIHONG | § | |
| WEI LAFRENZ (a/k/a SARA WEI) and | § | |
| DONGA FANG, individuals, | § | |
| | § | |
| Defendants. | | |

**DECLARATION OF L. DAVID ANDERSON**

I, L. David Anderson, declare pursuant to 28 U.S.C. § 1746, that the following is true and correct:

1.      I am a Partner with the law firm of Baker & Hostetler LLP and counsel to Defendants GTV Media Group, Inc. ("GTV") and Saraca Media Group, Inc. ("Saraca") in the above-referenced lawsuit.  I submit this declaration in support of Defendants GTV Media Group, Inc. and Saraca Media Group, Inc.'s Motion to Dismiss the First Amended Complaint and Memorandum of Law in Support.

2.      Attached hereto as Exhibit A is a true and correct copy of a letter, dated November 3, 2020, from plaintiff Xiqiu Fu to GTV and Saraca.  The letter is referred to in the

First Amended Complaint (*see* ¶ 98, referred to as the November 6, 2020 letter) and is central to

plaintiff's civil stalking and defamation claims.


      I declare under penalty of perjury that the foregoing is true and correct.


Dated:  May 14, 2021                        */s/  L. David Anderson*                   
          Dallas, Texas                         L. David Anderson

**Exhibit A**



November 3, 2020

Mr. Guo Wengui (a/k/a Miles Kwok,                    GTV Media Group, Inc.
a/k/a Wengui Guo, a/k/a Miles Guo,                   162 East 64th Street
a/k/a Ho Wan Kwok)                                   New York, NY, 10065
751 Fifth Avenue,
New York, NY 10022

Mr. Guo:

For the past several months, you, your media companies and platforms, and your individual agents have orchestrated a malicious campaign of character assassination and defamation against me and my nonprofit organization, ChinaAid. You have repeatedly and systematically issued knowingly false and defamatory statements against me and my organization, both over the internet and through your agents in Midland, Texas, in an effort to smear me and my organization in various ways. These knowingly false and malicious statements include accusations that I am a Chinese Communist Party (CCP) spy, a fake priest, a human trafficker, a money launderer, a domestic abuser, a peddler of lies, and an evil person.

To advance your campaign of vilification against me and my organization, ChinaAid, you have intentionally misled the public with slander, libel, and defamatory images, which you have broadcast to hundreds of thousands of people. You and your agents have directed and overseen the distribution of flyers, articles, signs, images, social media posts, live video broadcasts, and other materials containing knowingly false and misleading statements intended to disparage my name and encourage protesters outside my home in Midland, Texas to intimidate and harass my family.

These false statements were neither isolated nor made incidentally, but were purposefully disseminated across a range of social media platforms and broadcasting services in which you take whole or partial ownership in, or provide consulting services to, including the websites gnews.org and gtv.org. Your reckless actions have encouraged your hundreds of thousands of followers on social media and across the internet to repeat your false allegations against me, to harass and intimidate my family, and to malign my name and that of my organization, ChinaAid. Your followers, in turn, have issued numerous death threats against me and continue to repeat your false and unfounded attacks that I am a "CCP spy," a "fake priest," and "evil."

Over a span of weeks, day after day, through these various media platforms, you made the following false and malicious defamatory statements:

- From September 24 – October 6, 2020, you posted a series of videos on your Chinese-language and English-language Twitter accounts (@VOG_2020 and @VOG2020, respectively) and your website gtv.org, in which you falsely accuse me of being "a CCP

spy" and a "fake democracy activist" who "deserve[s] to die."  You also wrongly accuse me of having orchestrated fraudulent asylum claims and having laundered millions of dollars through dumpling houses owned by pro-democracy activist and U.S. citizen Sasha Gong.  You falsely asserted that sufficient evidence exists for "Bob Fu… to spend the rest of his life in prison."

- On October 4, 2020, you and your agents directed and oversaw the distribution of defamatory flyers throughout neighborhoods and churches in Midland, Texas, which falsely accuse me of being a "fake priest and CCP spy."

- On October 7, 2020, you posted a video on your Twitter accounts and website gtv.org in which you falsely accuse me of having encouraged my peaceful, law abiding congregation of committed Christians to commit acts of violence and harassment.

- On October 9, 2020, you and your agents published an article on gnews.org entitled Miles Guo: Bob Fu, the Fake Pastor Thought He Was Being Clever, But Played Right into Our Hands, in which you falsely accuse me of having bribed the Mayor of Midland, Texas, Honorable Patrick Payton, and having committed other criminal acts.  You also falsely accuse me of being associated with the Chinese Ministry of State Security (MSS).

- On October 10, 2020, you and your agents published an article on gnews.org entitled Religion Rally – Another Maneuver of a Disguised CCP Spy, "Pastor" Bob Fu?, in which you once again sought to smear my reputation by falsely tying me to the CCP and the MSS.

- On October 12, 2020, you issued a statement on your English-language Twitter account (@VOG2020) in which you falsely suggest that I am currently under investigation by U.S. law enforcement officials for being a "fake pastor" and "CCP minion."

- On October 21, 2020, you and your agents published an article on gnews.org entitled An Open Letter to Mayor Patrick Payton, Senator Ted Cruz, and Senator Marco Rubio , in which you refer to me as a "religious quack" and falsely accuse me of being a "secret agent" for the CCP who has bribed U.S. officials and committed espionage.

- From October 9 – October 30, 2020, you and your agents disseminated grotesque and innumerable caricatures of me portrayed as a communist devil and CCP spy, in which you label me "fake pastor," "religious quack," "fake democracy activist," "CCP minion," "pro-democracy imposter," "phony democracy fighter," "evil," and other false and defamatory labels.

These statements are utterly and entirely false.  My life in the United States has been devoted to Christian ministry and the cause of freedom and human dignity.  Consistent with my long-held Christian faith and my duties as a husband and as a father to three children, I have never committed the vile acts of which you accuse me.  Nor have I ever encouraged anyone else to threaten, intimidate, or commit acts of violence against another human life.  You have falsely and maliciously accused me of human trafficking when you know that I have stood steadfastly in favor of the cause of victims of this human scourge.  You have also falsely and maliciously accused me

of having laundered funds and received funds improperly for purposes of assisting in asylum claims. Your statements are a direct affront to my integrity as a Pastor and the integrity of ChinaAid as law-abiding and unapologetically Christian nonprofit organization.

I am not, nor have I ever been, a member of the Chinese Community Party. I fled Communist oppression as a religious refugee in 1997. Since then, I have operated my nonprofit organization with integrity, compassion, and with full adherence to the laws of the United States – especially in carrying out the activities at the heart of my Christian ministry, such as providing assistance to religious refugees and prisoners of conscience.

On my personal Twitter account, @BobFu4China, I have offered you and your followers my prayers and urged you to seek repentance according to God's promise expressed in John 3:16. I have declared God's love for you and your followers. I have urged our Christian brothers and sisters to pray for you and to refrain from engaging in any form of counter-protests, offering instead that they share the Gospel of Jesus Christ and God's love with you and your followers. Still, you, your media companies and platforms, and your individual agents continue to issue false and defamatory statements against me and my ministry, and threaten the safety of my family's home.

Despite overwhelming condemnation of your behavior by United States Senators, Members of the U.S. House of Representatives, United States Ambassadors, the Mayor of my family's adopted home in Midland, Texas, and various religious and human rights organizations, you, your media companies and platforms, and your individual agents have continued to levy an unrelenting broadside of false and malicious attacks against me personally and my nonprofit organization. Your statements have now provoked threats of suicide, homicide, and arson deemed credible by local and federal law enforcement authorities. Day after day, you have disrupted the regular use and enjoyment of my family's home, as well as the homes of my neighbors. You have unduly burdened the wellbeing of my family, including disrupting the continued attendance at school of my 15-year old daughter. My children have not seen their father in over 26 days, and your threats of violence and other provocations have caused them to reasonably fear for my safety as well as their own.

You have trampled day after day, week after week, on my reputation and my livelihood. You have spewed falsehood and waged a campaign deceit; your defamatory statements have provoked threats of actual violence against me and my property. Accordingly, **I, Xiqiu (Bob) Fu, hereby demand forthwith a full and complete retraction and disavowal of every one of the above inflammatory and unfounded charges against me and my organization, ChinaAid.** I further demand that you immediately cease and desist from summoning your followers to take action, including, but not limited to, advocating the use of physical violence against me, my property, and my organization. I further demand that you cease and desist from referring to my name or that of my nonprofit organization in a false and unflattering light, whether by slander, libel, or any other actionable means of defamation.

Both in my personal and individual capacity as a human being – and as CEO of the nonprofit ministry ChinaAid – I demand that this comprehensive, unconditional retraction be issued immediately through the same platforms and media vehicles you have employed in espousing your vicious and actionable campaign of lies. Should you fail to timely comply with this formal demand and issue a complete retraction in the public forum, in writing and by the same digital means employed by you and your controlled entities, and cease forthwith from spreading falsehoods

Page 4

about me and my organization, I reserve the right to pursue all remedies that are afforded to me by the laws and Constitution of the United States and the State of Texas.

Sincerely,

Xiqiu (Bob) Fu
Founder and President,
ChinaAid Association
P.O. Box 8513
Midland, TX 79708

cc:   Saraca Media Group, Inc.
    162 East 64th Street,
    New York, NY, 10065

    Donga Fang
    21 Maynard St.
    San Fransisco, CA 94112

    Rongliang Starks
    3022 Barnhill Ln.
    Sugar Land, TX 77479

    Liping Nettesheim
    6666 Harbor Town Dr. A209
    Houston, TX 77036

    Chen Qisheng
    28914 Golden Spike Ct.
    Katy, TX 77494